(26 Misc. Rep. 726.)

### METZ v. VIRGIL PRACTICE–CLAVIER CO.

(Supreme Court, Appellate Term. March 24, 1899.)

SALES—IMPLIED GUARANTY.

In an action for the value of articles made and sold for a certain use, the evidence showed that at the time they were to be used they were not sufficiently seasoned, were imperfect, and that competent and experienced workmen were unable to use them; and it was not shown with reasonable certainty that they would ever be fit for the use for which they were designed, though they were partially satisfactory at the time of trial. *Held* that a judgment for their price was not supported.

Appeal from municipal court, borough of Manhattan, Second district.

Action by Charles Metz against the Virgil Practice-Clavier Company. There was a judgment for plaintiff, and defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Hobbs & Gifford, for appellant.
T. L. Eckerson, for respondent.

FREEDMAN, P. J. This action was brought to recover the value of 1,672 sets of decalcomania transfers, which are words or figures designed to be transferred from paper to wood or leather. The plaintiff is the assignee of the cause of action. Thomas P. Burke, the assignor, was the only witness sworn on behalf of the plaintiff whose testimony materially affects the case. Burke, at the time the cause of action accrued, was the manufacturer of the goods in question, and

personally made the sale to the defendant. At the time the order was given by defendant to Burke for the transfers, nothing appears to have been said as to when the goods were to be delivered, or when they were needed for use by the defendant; but on December 18, 1896, the defendant, by its president, Virgil, wrote Burke that the defendant would not have use for the goods before the following July or August, and in July, 1897, Burke made the transfers, and sent them to the defendant. Although the testimony is not direct upon the question, the reasonable inference to be drawn from the letters and the other circumstances of the case is that Burke knew the goods were to be used, if not immediately, at least within a short time after delivery. It appears, however, that the defendant made no use of them until October, 1897, at which time they were found to be imperfect, and the defendant was unable to use them, and so informed Burke. Some correspondence passed between the parties relative to the manner in which the transfers should be used; Burke giving instructions, and the defendant claiming to follow them, but without successful results. Burke subsequently, by appointment, came to New York, in October or November, 1897, and endeavored to use the transfers. There is some dispute in the testimony as to the degree of success attained by Burke in the use of the goods, and Burke testifies that he told the parties present at the experiment that the goods were not sufficiently "seasoned"; to "let them season, and they would be all right." So that it appears that the delay in the use of the goods tended to benefit them, and that both at the time of their delivery and the time of their use the goods had not sufficiently seasoned. It was clearly shown by the testimony of the defendant's witnesses that the transfers were imperfect, and that experienced workmen, fully competent and acquainted with such work, were unable to use them, and a large amount of them were returned to Burke within a short time after his visit to defendant. From all the facts and circumstances in this case, as shown by the evidence, Burke must be held to have warranted the goods to be adapted to the use for which they were intended. "Where a manufacturer contracts to sell an article of his own make or manufacture, and there is no express warranty, the law implies a warranty that it shall be reasonably fit for the purpose to which it shall be applied." 10 Am. & Eng. Enc. Law, p. 144, and cases cited. The proof shows that the goods could not be used at the time and for the purpose they were intended to be used; nor was it shown with reasonable certainty that they would ever be fit for the purpose for which they were designed. That some of the experiments made at the time of the trial appeared to be satisfactory, while others failed, does not relieve the plaintiff from the implied guaranty. The judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.