(27 Misc. Rep. 548.)

### LEAGUE CYCLE CO. v. ABRAHAMS.

(Supreme Court, Appellate Term.   May 24, 1899.)

1. SALES—EXPRESS WARRANTY—TRADE CIRCULARS.

   A manufacturer's circular advertising an article of his make, describing in detail the particular merits claimed for it, and stating that, it having been subjected to the most severe practical tests, the maker was in position to guaranty it to be all that was claimed for it,—perfect of its kind,—and that he was confident it was an article unsurpassed and unsurpassable, is not an express warranty of the quality of the article.

2. SAME—IMPLIED WARRANTY—BREACH—DAMAGES.

   Where a manufacturer contracts for the delivery of an article of a particular kind, an implied warranty arises that the article is merchantable; but, before a buyer can recover for a breach of such warranty after acceptance, he must show that there were latent defects, which were not discoverable by due diligence, in the application of ordinary inspection and customary tests.

Appeal from municipal court, borough of Manhattan, First district.

Action by the League Cycle Company against Levi Abrahams to recover a balance due on account.   There was a judgment for plaintiff, and defendant appeals.   Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Herbert A. Heyn, for appellant.
David T. Davis, for respondent.

LEVENTRITT, J.   In the spring of 1896, the plaintiff, then known as the "Bolte Cycle Manufacturing Company," was engaged, in the city of Milwaukee, in the manufacture of bicycles and bicycle parts. The defendant, at that time a manufacturer of folding beds and furniture in the city of New York, added a bicycle department to his business.   It appears that he obtained possession of a circular issued and distributed by the plaintiff advertising, as specialties, certain improved

forms of the "'96 hub, pedal, and vise." The description of these specialties is prefaced by the following language: "These articles having been subjected to the most severe practical tests, we are in a position to guaranty them to be all that is claimed for them,—perfect of their kind." The particular merits claimed for the '96 hub are minutely detailed,—among them its increased strength, secured by the adoption of double spokes bent at sharp angles, thus avoiding many of the otherwise necessary perforations in the hub, as well as the usual breaking and chipping of the heads of spokes. The description closes with the statement: "We are confident that it is an article unsurpassed and unsurpassable." The spokes are referred to only incidentally, as a means of strengthening the hub by reason of their form, without any affirmation as to their durability, material, or quality. The record does not disclose how or when the defendant received the circular, or that the plaintiff knew that it was in his possession. All the transactions between the parties were had by correspondence, throughout which no reference was made to this circular. The preliminary inquiry as to price was followed by a request for a sample hub, which the plaintiff forwarded. After its receipt, orders were sent for hubs, spokes, and other articles, to be delivered as soon as manufactured. On June 9, 1896, the first shipment, including hubs and spokes, was made. Three weeks later the defendant remitted in full therefor. At the same time he wrote, "Many of the spokes broke, and ask that you send some without charge." To this the plaintiff, on July 2d, replied: "We shall include in the next shipment a few hundred spokes, without charge, to replace broken ones." On July 9th the plaintiff forwarded the balance of the hubs and spokes, sending also, free of charge, a quantity of spokes in substitution of the defective ones. In August the defendant commenced to find fault with the hubs, and, the plaintiff consenting to take them back, a large portion was returned, and credit was given for the value. Further complaints were made at intervals, and the plaintiff, in every instance, either accepted the return of the articles or exchanged them; but in no instance did the defendant complain until the goods had been in his possession a considerable length of time, and generally not until the defects had developed in the use of the wheels in the manufacture of which the hubs and spokes had been utilized. The plaintiff frankly admitted in one of its communications that it had inadvertently used a poor quality of wire in the manufacture of some of the spokes. In one of the letters, after having availed himself of the plaintiff's proposition, the defendant wrote that he would require reimbursement for the expense to which he had been subjected in repairing wheels rendered unserviceable by reason of those imperfect parts. The plaintiff replied, reiterating its proved willingness "to make good any defects," but positively refused to be held accountable for "any bills for repair." Thereafter, further goods were returned, but no new dealings were had between the parties until January of the following year, when the defendant reopened negotiations, and procured, upon request, a sample of the '97 hub, concerning which no representations were made. An order was subsequently sent and filled. Prior to the acceptance of the order, the defendant

made a request for a guaranty, which the plaintiff ignored. After the acceptance, the defendant wrote: "If you recommend the hubs, please advise, so that we can recommend them to our customers;" and received this reply: "In regard to recommending these hubs, we cannot speak of them too highly, as they are made of the very best material, and we are positive that they will be a success." After some time had elapsed, the defendant claimed imperfections in the '97 hubs, and in July returned a quantity of them, for which he was duly credited. Throughout this period, the '96 hubs and spokes were still being returned, as theretofore. This action was brought for the balance due on the unpaid shipments, deducting all the credits to which the defendant was entitled. The correctness of the amount was not questioned, and the defense consisted of a counterclaim for damages arising out of an alleged breach of warranty. The disallowance of the counterclaim leads to this appeal.

The appellant contends that there was an express warranty of the quality of the hubs and spokes arising out of the affirmations of the circular, and, failing in that, that there was an implied warranty surviving acceptance. We shall consider both contentions.

First, as to the express warranty. We do not think that the statements quoted from the circular amount to anything more than the extravagant praise with which dealers are prone to recommend their wares. A vendee cannot rely on mere "dealers' talk" to impose on a vendor the obligations of a warranty. Under certain circumstances, positive affirmations contained in advertisements, circulars, and catalogues have been construed to constitute express warranties (Bradford v. Manly, 13 Mass. 144; Snow v. Manufacturing Co., 69 Ala. 111; Power v. Barham, 7 Car. & P. 356; and see Hawkins v. Pemberton, 51 N. Y. 198); yet merely to advertise an article as perfect of its kind, or as "unsurpassed and unsurpassable," is not such a representation, either as to its quality, condition, or character, as will support a warranty. While it is not necessary that the vendor should intend by his assurances to warrant the subject of the sale, yet, to have that effect, they must not be merely expressions of opinion, but clear and positive affirmations, made at the time of the sale, for the purpose of assuring the buyer of the truth of the fact affirmed, and so received and relied on by him as to induce him to make the purchase. Hawkins v. Pemberton, supra; Shippen v. Bowen, 122 U. S. 581, 7 Sup. Ct. 1283. The detailing of the merits claimed for the hub, and the incidental reference to the spokes, so far from being positive affirmations of fact, are only descriptive statements, leading to the assertion that the plaintiff is "in a position to guaranty them"; and while no particular words are necessary to constitute a warranty (Manufacturing Soc. v. Lawrence, 4 Cow. 440; Canning Co. v. Metzger, 118 N. Y. 260, 23 N. E. 372), and while the intention of the vendor is not essential, yet where, as in the language quoted, there is a specific disavowal of present intention to warrant, the vendee cannot extend a mere willingness to tender a warranty when called for into a present obligation.

Granting, however, that the language of the circular could be made the basis of an express warranty, there is no evidence that the defend-

ant relied on anything therein contained. His own testimony fails to disclose reliance. The record shows only that a circular came into his possession, and that some time thereafter he entered into correspondence with the plaintiff. That correspondence, impliedly as well as explicitly, negatives that dependence on the statements of the circular which is a prerequisite to the maintenance of this branch of the defendant's claim. The initial letter of inquiry contains no allusion to the circular, nor is it referred to throughout the correspondence. The request for a sample, its receipt, and the consequent first order, rather indicate that it was the defendant's purpose to rely on his own examination as a guide. Further, the correctness of the conclusion that his purchases were independent of the circular is emphasized by the letter wherein he inquires whether the plaintiff will recommend the hubs, in order that he might, in turn, recommend them to his customers.

But, even if we take the view most favorable to the defendant under the circumstances of this case, whether the circular contained clear and distinct affirmations, or mere expressions of opinion, and whether he placed reliance thereon, were questions of fact (Hawkins v. Pemberton, supra), concerning which the decision of the justice, sitting as a trior of the facts, must be regarded as having been adverse to the defendant. We conclude, then, that in no aspect was there an express warranty.

This brings us to a consideration of the second contention: Was there an implied warranty, which survived acceptance? That there was an implied warranty is scarcely debatable. The plaintiff was the manufacturer of the hubs and spokes sold to the defendant. The contract was executory, and for the delivery of something of a particular kind. The plaintiff knew the use for which they were designed. An implied warranty, therefore, arose that those articles should be merchantable, and fit for the purpose intended, and embraced patent, as well as latent, defects resulting from the process of manufacture or the materials employed. Hoe v. Sanborn, 21 N. Y. 552; Carleton v. Lombard, 149 N. Y. 137, 43 N. E. 422; Bierman v. Mills Co., 151 N. Y. 482, 45 N. E. 856; Metz v. Clavier Co., 26 Misc. Rep. 726, 56 N. Y. Supp. 1081. The plaintiff must be presumed to have understood the process of the manufacture of the hubs and spokes sold by it, and to have known of any hidden defect caused by such process, and against which reasonable diligence might have guarded. By its occupation, it held itself out as competent to make articles adapted to the purpose for which they were intended. Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537. The defendant had a right to rely on the superior knowledge of the plaintiff.

So far as patent defects are concerned, the rule has long been recognized that, in cases of executory contracts for the sale and delivery of personal property, the remedy of the vendee to recover damages for breach of the implied warranty does not survive the acceptance of the property after opportunity to ascertain the defect. Reed v. Randall, 29 N. Y. 358; Dounce v. Dow, 64 N. Y. 411. But this rule has no application where the defect is latent, and not ascertainable by inspection, or by the application of the usual and ordinary

tests. Carleton v. Lombard, supra; Bierman v. Mills Co., supra. In Carleton v. Lombard, which was an action to recover damages for the breach of an executory contract for the sale of petroleum produced by the defendant through certain manufacturing processes, the court say:

"If, however, the defects which the plaintiffs now claim existed at the time of delivery, and which they claim to have produced the damages, were discernible upon the inspection contemplated by the contract, they were not hidden or latent defects, within the meaning of the rule." Page 150, 149 N. Y., and page 426, 43 N. E.

And in summing up, these conclusions are announced:

"(1) The defendant was bound to deliver an article of refined petroleum that was free from latent or hidden defects that rendered it unmerchantable at the time and place of delivery, and that could have been avoided or guarded against in the process of refinement, or in the selection of the raw material, by reasonable care and skill. (2) This obligation survived the acceptance, if the latent defects were such as would not appear upon an inspection to ascertain whether the oil delivered corresponded with that described in the contract."

In Bierman v. Mills Co., supra, which was an action by a manufacturer of clothing to recover from a manufacturer of cloth damages for a breach of the implied warranty that felt manufactured and sold to him was merchantable and fit for the purpose intended, the same principle is thus enunciated:

"The obligation of the defendant would survive the plaintiff's acceptance of the goods, if the latent defects were not discoverable upon inspection. Upon all the evidence, the case should have been submitted to the jury, to determine whether there had been a breach of an implied warranty that the felt cloth should be merchantable. It was for them to say whether it was unmerchantable and unfit for plaintiff's purpose, because of the use of defective material, and if they believed the evidence to that effect, and that the defect was not discoverable by the plaintiff upon the usual and ordinary inspection and tests in such cases, they would be justified in awarding damages to the plaintiff."

Where the defect is of the nature defined in the cases just cited, it is immaterial whether or not the sale was by sample. While there is no doubt that the implied warranty will be excluded as regards any defects which the sample would disclose to a buyer of ordinary diligence and experience, yet where, by the use of all ordinary and usual means, the buyer would not detect in the sample the latent defects of which he complains, the implied warranty would attach. Drummond v. Van Ingen, 12 App. Cas. 284.

Applying these various principles to the case under review, and bearing in mind that the defendant accepted the hubs and spokes, his right to recover for the breach of the warranty depends on the nature of the defects and the means adopted to ascertain them. If the defects were patent, the warranty did not survive acceptance; if latent, the warranty survived only if it appears from the evidence that they were not discoverable by ordinary inspection and tests.

Although there was a breach of the implied warranty, we are of the opinion that the defendant has failed to bring himself within the exception that will permit the allowance of his counterclaim. From the nature of the defects themselves, we cannot conclude whether they were patent or latent, and he offered no evidence to elucidate the

matter. Nor did he offer evidence of any inspection or test made at the time of the acceptance of the goods. On the other hand, when his wheels were rejected by customers, he readily discerned the imperfections in the spokes, and it is obvious, from the testimony, that he could have detected them, in like manner, prior to their acceptance. It is true that the defendant, although he was inexperienced, and had intrusted the manufacture of his bicycles to a manager and superintendent, ventured the statement that he could not tell by inspection that the spokes were defective. This inability, however, proves nothing. Not only was he not expert, but there is absolutely no evidence that any inspection, test, or examination was made. Similarly, his manager, a man without previous experience in the bicycle business, after testifying in like manner to a conclusion without reciting any acts done to warrant it, confutes both his and his employer's unsupported expressions of opinion by admitting that, when his attention was directed to the weakness of the spokes, he verified it by the simple act of bending one of them. Except the statements referred to of the defendant and his manager, the record is silent as to any test or examination made of the spokes. With regard to the hubs, the failure of proof is even more complete. The complaints in the letters are not substantiated, and the absence of all reference in the defendant's case to their alleged defects would indicate that that claim was abandoned.

The burden was on the defendant to show, not only that the defects were latent, but also that they were not discoverable by due diligence, in the application of ordinary inspection and customary tests. He has not carried this burden, and the judgment must therefore be affirmed, with costs. All concur.

