(42 Misc. Rep. 178.)

### BAYLIS et al. v. WEIBEZAHL.

(Supreme Court, Appellate Term. November 30, 1903.)

1. SALES—MANUFACTURE OF GOODS—DEFECTS—FAILURE TO RETURN—CANCELLATION OF CONTRACT.

Where plaintiff contracted to manufacture and deliver to defendant certain pliers, the fact that certain installments of pliers delivered, but not returned, did not comply with the contract, did not justify defendant in canceling the contract and refusing to receive the balance, plaintiff having offered to remedy the defects in the pliers delivered, and to manufacture the balance in accordance with the contract.

2. SAME—SUBSTANTIAL PERFORMANCE.

Where the manufacturer of pliers under a contract proved delivery of four installments, and that none of the pliers so delivered had been returned as defective when defendant canceled the contract and refused to receive further installments by reason of such alleged defects, plaintiff's evidence of substantial performance of the contract on its part was sufficient to present a question for the jury.

3. SAME—IMPLIED WARRANTY—MERCHANTABLENESS—DEFECTS.

Where an executory contract for the manufacture and delivery of certain patented pliers required that the materials should be fit for the purpose, and that the materials, workmanship, and finish of the pliers should be first-class, and equal to certain pliers named, and the manufacturer knew the use for which the pliers were designed, the contract

contained an implied warranty that the articles contracted for should be merchantable, which embraced patent as well as latent defects resulting from the process of manufacture or the materials employed.

4. SAME—WAIVER.
An implied warranty against patent defects in an article manufactured and sold is waived by an acceptance of the property after a reasonable opportunity to ascertain the defect.

5. SAME—ACCEPTANCE.
In an action for breach of a contract for the manufacture and sale of pliers, an acceptance of pliers delivered under the contract, and alleged to have been defective, by a purchaser from defendant, constituted an acceptance by defendant.

6. SAME—INCONSISTENT DEFENSES.
Though a defendant in an action for breach of a contract of sale may plead a rescission of the contract and also a breach of warranty on the part of the plaintiff, defendant cannot recover affirmative relief based both on a rescission and an affirmance of the contract.

Appeal from City Court of New York.

Action by Robert N. Baylis and others against Herman G. Weibezahl. From a judgment in favor of plaintiffs, and from an order denying defendant's motion for a new trial, he appeals. Affirmed.

Argued before FREEDMAN, P. J., and BISCHOFF, and BLANCHARD, JJ.

James A. Speer, for appellant.
Wolcott P. Robbins, for respondents.

FREEDMAN, P. J. This action was brought to recover damages for the breach by the defendant of an executory contract for the manufacture and sale of certain pliers in six monthly installments. The plaintiffs, the manufacturers, made and delivered four out of the six installments, which were paid for by the defendant, the vendee. The defendant at this point canceled the contract, claiming that some of the pliers already delivered and paid for were improperly manufactured, but did not return or offer to return any of the goods. The plaintiffs therefore brought this action to recover the amount of damages sustained by them by the cancellation of the contract. The terms of the contract provided, among other things, that, if the contract was not renewed by the defendant at the end of the term named in it, the defendant was to purchase from the plaintiffs all those special tools and special machinery which it was necessary for the plaintiffs to buy in order to enable them to manufacture the pliers contracted for at the price paid for them.

The answer admits the cancellation of the contract, but alleges that the contract, so far as it was performed, was not properly performed by the plaintiffs, and sets up a counterclaim for damages alleged to have been suffered by the defendant because the pliers already received and paid for by him were not manufactured and delivered according to the terms and conditions and specifications contained in the contract.

At the trial the issues were litigated at great length, and the evidence took a wide range. It appeared that the plaintiffs were manufacturers of hardware specialties in the city of New York; that the defendant was the inventor of the pliers contracted for; that said pli-

ers were a new invention, and very different 'from anything then on the market; that at the time of the signing of the contract the plaintiffs had nothing before them but the rough drawing attached to the contract and a rough, brass model; that no working drawings or descriptions of the various parts of the pliers or complete specifications were given to them; that the defendant furnished the plaintiffs with a sample of a plier there on the market called the "Triumph," which was made and sold by other parties; and that the contract provided that the new pliers should be equal in regard to material workmanship and finish to this "Triumph," and that the workmanship and materials should be first-class, and that the materials should be suitable for the purpose for which each was intended, and that the pliers should be delivered in merchantable condition. Indeed, it was clearly established that the only specifications which it was possible to frame at the outset, and which were made part of the contract, had reference to the quality of the materials and the workmanship, and that the sample furnished called the "Triumph" was not furnished as a sample to which the new pliers had to conform in every particular, but as a guide in aiding the plaintiffs to manufacture the new pliers. In the course of the trial the plaintiffs admitted that some of the pliers delivered were defective, but it was also shown that they could have been put in first-class condition if defendant had accepted plaintiffs' offer to do so. Defendant laid much stress upon the fact that his contract with the Tower Company was canceled by reason of these defects But there is considerable proof in the case that, if defendant had accepted the offer to repair, he could have made new arrangements with the Tower Company, or his contract with it might have been reinstated.

Under all the circumstances disclosed the case at bar seems to be controlled by the decision of Cahen v. Platt, 69 N. Y. 348, 25 Am Rep. 203. In that case the plaintiff sold to the defendants 10,000 boxes of glass, which was to be "of approved standard qualities." The glass was to be delivered during the months of October, November, and December, 1872, and January, 1873. In pursuance of this contract the plaintiff delivered to the defendants 4,924 boxes of glass, for which they paid. Afterwards they refused to receive any more, and the action was brought to recover the damages consequent upon such refusal. The defendants claimed and gave evidence to the effect that the glass delivered was not of approved standard quality, and hence claimed that they had the right to refuse to take the balance. But this claim was overruled by the Court of Appeals in the following language, viz.:

"While some months after the glass was delivered the defendants complained of its quality, they at no time offered to return it, or gave plaintiff notice to retake it. * * * The fact that the glass delivered and received upon the contract was inferior did not give them the right to repudiate the contract altogether. They could demand better glass, and, when the plaintiff offered to deliver the balance, if it was inferior, they could refuse to accept it. But if plaintiff was ready and willing to deliver for the balance such glass as the contract called for, they were bound to receive it. Here the plaintiff requested them to take the balance of the glass, and they refused to take any more, and thus repudiated and put an end to the contract. There was no proof that the plaintiff insisted upon delivering inferior glass, or that he was

not ready and willing to deliver glass of the proper quality. They did not take the position that they were willing to receive glass of approved standard quality, but refused to take any more glass under the contract. There was therefore such a breach of contract as entitled the plaintiff to recover such legal damages as he sustained by the breach."

Upon the authority of the case, which has never been overruled or questioned, it must be held that the defendant's refusal to go on with the contract after the fourth installment of pliers had been delivered constituted a breach of the contract by the defendant, and gave the plaintiffs an immediate right of action against him.

The principle upon which Howard v. Daly, 61 N. Y. 362, 19 Am. Rep. 285, and Nichols v. The Scranton Steel Co., 137 N. Y. 471, 33 N. E. 561, were decided leads to the same result. Moreover, upon the theory that the plaintiffs, in order to maintain their action, were bound to show affirmatively substantial performance on their part up to the time of the cancellation of the contract by the defendant, the question in that regard was upon sufficient evidence submitted to the jury, and determined by them in favor of the plaintiffs.

This brings us to the consideration of defendant's counterclaim. In Cahen v. Platt, supra, there was no counterclaim, and in that respect the said case is distinguishable. In the case at bar a counterclaim was interposed, which upon the trial was claimed to rest upon a breach of warranty. The counterclaim did not allege, and the proof at the trial did not show, an express warranty within the authorities. Smith v. Coe, 170 N. Y. 162, 63 N. E. 57; Studer v. Bleistein, 115 N. Y. 316, 22 N. E. 243, 5 L. R. A. 702; League Cycle Co. v. Abrahams (Sup.) 58 N. Y. Supp. 306. Nor was the contract made according to a sample, and hence no warranty can be read into it on any such theory. In fact, there was no sample, for the "Triumph" was not furnished as a sample to which the articles to be manufactured had to conform in every particular, but as a guide to aid the plaintiff in the manufacture of the articles contracted for. There was, however, an implied warranty. The contract was executory, and for the delivery of something of a particular kind, and the plaintiffs knew the use for which the articles contracted for were designed, and thus, under the terms of the contract, an implied warranty arose that the articles contracted for were merchantable, that the materials of each should be fit for the purpose for which each was intended, that they should be equal in regard to materials, workmanship, and finish to the "Triumph," and that the workmanship and materials should be first-class. This implied warranty embraced patent as well as latent defects resulting from the process of manufacture or the materials employed. League Cycle Co. v. Abrahams, supra, and cases there cited. The evidence showed that none of the defects were latent, and that each could have been discovered upon inspection and examination. Whatever defects there were were patent. As to such defects the rule has long been recognized that in cases of executory contracts the remedy of the vendee to recover damages for breach of the implied warranty does not survive the acceptance of the property after reasonable opportunity to ascertain the defect. League Cycle Co. v. Abrahams (Sup.) 58 N. Y. Supp. 306; Reed v. Randall, 29 N. Y. 358, 86

Am. Dec. 305; Dounce v. Dou, 64 N. Y. 411; Studer v. Bleistein, 115 N. Y. 316, 22 N. E. 243, 5 L. R. A. 702; Smith v. Coe, 170 N. Y. 162, 63 N. E. 57. In the case at bar the question whether the pliers delivered were accepted by the defendant after reasonable opportunity to ascertain defects was submitted to the jury under proper instructions, and their verdict in this respect should not be disturbed. The acceptance by the Tower Company was in legal effect the same as an acceptance by the defendant himself. Smith v. Coe, 55 App. Div. 585, 67 N. Y. Supp. 350. Independently of that, the defendant throughout the progress of manufacture had ample opportunity for inspection and examination at plaintiffs' factory.

All the questions which could well be litigated were fully submitted' to the jury in an elaborate charge which carefully guarded every right of the defendant. And when it is borne in mind that, although a defendant, under our system of pleading, may plead as many defenses and counterclaims as he may have under the Code of Civil Procedure, and that the objection of inconsistency between them is not available as matter of pleading, and that consequently he may plead rescission of the contract, and also a breach of warranty on the part of the plaintiff (Bruce v. Burr, 67 N. Y. 237), it is nevertheless settled law that a party cannot in the end have affirmative relief both in rescission and in affirmance of a contract (Hyatt v. Ingalls, 49 N. Y. Super. Ct. 375), and that a party will not be allowed to avoid a contract as to those parts which would work him an injury, and affirm it as to those which would be profitable to him (Am. & Eng. Enc. Law, vol. 21, p. 91, and cases there cited), it will be readily found upon a careful examination of the present case that the defendant, in the treatment of his counterclaim and the evidence admitted under it, received all the consideration, if not more, that he was entitled to. None of the exceptions taken by the defendant presents reversible error.

The defendant, upon this appeal, has submitted a brief of 104 printed pages, but what has already been said is deemed a sufficient disposition of all the points raised. Upon the whole case the verdict of the jury represents substantial justice, because, while they found substantial performance by the plaintiffs, they also seem to have made an allowance for the defects which the plaintiffs offered to remedy if they had been permitted to do so.

The judgment and order should be affirmed, with costs. All concur.