(43 App. Div. 180.)

### WAEBER et al. v. TALBOT et al.

(Supreme Court, Appellate Division, First Department. July 18, 1899.)

1. SALES—EXECUTORY CONTRACT—WARRANTY OF QUALITY.
    A stipulation by which one agrees to deliver to another, at a future date, a certain quantity of goods, of a specified quality, at a price named, without present words of sale, is an executory contract of sale, without any warranty as to the quality of the goods.

2. SAME—DESCRIPTIVE WORDS.
    Words used in an executory contract of sale to describe the specific quality of the goods to be delivered are words of description merely, and do not constitute a collateral warranty.

3. SAME—ACCEPTANCE OF INFERIOR GOODS.
    A vendee who accepts and retains goods delivered to him under an executory contract, specifying their quality, with full knowledge of their actual character, cannot hold the vendor liable in damages if the goods are of inferior quality.

Appeal from trial term, New York county.

Action by Gustavus A. Waeber and another against Gabriel Talbot and others. From a judgment entered upon dismissal of their complaint, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

F. De Lysle Smith, for appellants.
Robert C. Taylor, for respondents.

INGRAHAM, J. This action was brought to recover the damages caused by what was alleged to be a breach of warranty upon the sale of certain French peas, the complaint, as originally served, alleging that the defendants represented and warranted the said peas to be of extra fine quality, and that, relying upon such representation and warranty, the plaintiffs' assignor agreed to purchase the same and pay therefor; that the said goods were not of extra fine quality, as represented and warranted by the defendants, but were of an inferior grade; and that by reason of their being of an inferior grade, and not as represented and warranted by the defendants, the plaintiffs have been damaged in the sum specified; and judgment is demanded for that amount. Upon this complaint the cause came on for trial, and, after a great amount of testimony had been taken, the court stated that the counsel for the plaintiffs

wanted to amend his complaint so as to allege that the defendants warranted the peas in question at the time of the sale to be merchantable, as "Talbot Extra Fine Peas, Sieve 23–24"; that the goods were not merchantable when they arrived, as "Talbot Extra Fine Peas, Sieve 23–24." Counsel for the defendants vigorously opposed this motion, as changing the cause of action, but the amendment was allowed, and the trial then proceeded, and the testimony introduced under the pleadings before the amendment was allowed to stand.

From the testimony it appeared that Lea, one of the plaintiffs, who are importers in the city of New York, in March, 1893, entered into a contract with the defendants, who are engaged in business in Bordeaux, France, as packers of food products, for the purchase by Lea of all of the defendants' peas packed in the season of 1893. These goods, however, were not delivered, and Lea brought an action against the defendants to compel them to carry out their contract. That action was settled by a stipulation dated November 8, 1893, by which the defendants agreed to deliver to the plaintiffs a certain number of cases of peas, which included 183 cases "Talbot Extra Fine Peas, Sieve 23–24," at $19 per case, and 152 cases "Talbot Extra Fine Peas, Sieve 23–24," at $22 per case, which the defendants agreed to deliver to the plaintiffs, duty paid, on the dock in the city of New York, on or before December 8, 1893. In pursuance of this contract, the defendants shipped to the plaintiffs the 335 cases of peas, which were received by the plaintiffs and paid for by them. The complaint, as amended, alleged, and there was evidence tending to show, that the said goods were not of the extra fine quality as warranted and represented, and were not at any time since the delivery thereof merchantable goods as "Talbot Extra Fine Peas, Sieve 23–24," but were of an inferior grade or quality; and that, by reason of the said goods being of an inferior quality, the plaintiffs sustained damage in the sum of $3,019.23. At the end of the trial, the complaint was dismissed.

It is clear, I think, that this was an executory contract for the sale of goods. By it the defendants agreed to deliver to the plaintiffs, upon the dock in New York, certain canned peas, of a specified quality, at a future time. The contract would have been complied with upon the delivery by the defendants to the plaintiffs of the number of cases of the goods described at the time specified. No specific cases of peas, and no part of any specified lot of cases of peas, were sold. There was simply an executory contract of sale, whereby the defendants agreed to deliver to the plaintiffs, upon a day named, on the dock in the city of New York, a certain number of cases of peas of the crop of 1893, and of a certain quality. None of the cases cited by counsel for the plaintiffs are authority for holding that there was a completed sale of any particular peas when this contract was made; for in this contract there were no specific goods described or identified as those included within the contract, and no general mass of goods from which the goods sold were to be separated. There are no present words of sale, but the defendants agreed to deliver to the plaintiffs, duty paid, on the dock in

the city of New York, on or before December 8, 1893, certain goods described. There was really no sale of goods, but a simple agreement to deliver goods at a price named in the future. Under this agreement, undoubtedly the defendants were bound to deliver to the plaintiffs the goods specified on or before the day named, and were liable for damages in case of a breach of that contract. But, as no specific goods were named, there were no specific goods the title to which passed to the plaintiffs upon the execution of this contract, or to which the plaintiffs would have been entitled. It being, therefore, a mere executory contract of sale, it is subject to the rules and principles that apply to such contracts. It is clear that there was no express warranty as to these goods. By the contract, the defendants agreed to sell and deliver to the plaintiffs certain goods of a specified quality, at a specified price, to be in decorated tins and of the crop of 1893. This all related to the description of the goods sold, and the defendants' obligation would have been fully performed if they had delivered to the plaintiffs the goods as specified of the crop of 1893, in decorated tins. The contract in this case is not unlike that in Iron Co. v. Pope, 108 N. Y. 232, 15 N. E. 335, where the plaintiffs sold and agreed to deliver to the defendants 900 tons of No. 1 extra foundry pig iron, at the price of $27 per ton. It was held that such a contract was an executory sale, and that there was no collateral warranty or agreement as to the quality of the iron; that the representation as to the kind and quality of iron was part of the contract of sale itself, descriptive simply of the article to be delivered in the future.

This being, therefore, an executory contract of sale, without express warranty, and the articles contracted to be sold having been delivered to, and received by, the defendants, the question presented is whether the plaintiffs could recover for any damages that they sustained in consequence of the articles not being up to the quality provided for by the contract; or, in other words, whether an acceptance of the articles, as a compliance with the contract, precluded the plaintiffs from holding the defendants responsible for any lack of quality in the goods so sold and delivered. There has been much confusion in the cases as to what has been called an "implied warranty" of quality upon the sale of an article of a particular description, but the modern cases tend to consider such a description of articles contracted to be delivered as descriptive words,—a part of the description of the goods sold. As was said by Judge O'Brien, in delivering the opinion of the court in Carleton v. Lombard, Ayres & Co., 149 N. Y. 148, 43 N. E. 425:

"The tendency of the recent decisions in this court is to treat such words as part of the contract of sale descriptive of the article sold and to be delivered in the future, and not as constituting that collateral obligation which sometimes accompanies a contract of sale, and known as a 'warranty.'"

Assuming that there was evidence tending to show that the articles were not as described in the contract, and not such as the plaintiffs were bound to accept, what was the right of the plaintiffs, after the delivery and acceptance of the articles sold? "The maxim of common law, caveat emptor, is the general rule applicable to sales,

so far as quality is concerned. The buyer (in the absence of fraud) purchases at his own risk, unless the seller has given an express warranty, or unless a warranty be implied from the nature and circumstances of the sale.   *   *   *   So far as an ascertained specific chattel already existing, and which the buyer has inspected, is concerned, the rule of caveat emptor admits of no exception by implied warranty of quality." Benj. Sales, § 644.

In the case of Couston v. Chapman, L. R. 2 H. L. Sc. 250, the rights of the vendee were discussed. In that case there was a sale of wine by sample, and Lord Chelmsford, in speaking of the right of the vendee to rescind the sale, said:

"In England, if goods are sold by sample, and they are delivered and accepted by the purchaser, he cannot return them; but, if he has not completely accepted them,—that is, if he has taken the delivery conditionally,—he has a right to keep the goods a sufficient time to enable him to give them a fair trial, and if they are found not to correspond with the sample, he is then entitled to return them.   *   *   *   With regard to the wine not corresponding with the sample, there can be no doubt whatever that large quantities of the wine in both lots was utterly bad, and could in no way whatever be said to conform to the sample; and therefore, upon the discovery of that fact, the appellants had a clear right, not (as appeared to be contended in the course of the argument) to retain the good wine and return the bad, but to rescind the contract for those lots altogether. The contracts being entire for each lot, the only way in which the appellants could discharge themselves from their obligation was by returning, or offering to return, the whole of each of the lots.   *   *   *   'Where a party desires to rescind a purchase upon the ground that the quality of the goods does not correspond with the sample, it is his duty to make a distinct offer to return, or, in fact, to return, the goods, by stating to the vendor that the goods are at his risk, that they no longer belong to the purchaser, that the purchaser rejects them, that he throws them back on the vendor's hands, and that the contract is rescinded.' "

And, while no particular form is essential, it is essential that the vendee should do some unequivocal act showing that he rejects the goods, and that they belong to the vendor, and not to the vendee. There is no distinction between the rights and obligations of the parties to a contract of sale by sample and upon a sale where the quality of the article is specifically described in the contract.

In Reed v. Randall, 29 N. Y. 360, the rule is recognized and applied:

"In case of executory contracts for the sale and delivery of personal property, the remedy of the vendee to recover damages, on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendee offers to return the property. The retention of the property by the vendee is an assent, on his part, that the contract has been performed. ·   *   *   *   The latter [the vendee] is not bound to receive and pay for a thing that he has not agreed to purchase; but if the thing purchased is found, on examination, to be unsound, or not to answer the order given for it, he must immediately return it to the vendor, or give him notice to take it back, and thereby rescind the contract, or he will be presumed to have acquiesced in its quality. He cannot accept the delivery of the property under the contract, retain it after an opportunity of ascertaining its quality, and recover damages if it be not of the quality or description called for by such contract."

°  The same rule was applied in Gurney v. Railway Co., 58 N. Y. 364, where the court say:

"The general rule is, when articles are sold upon an executory contract like the one in question, that the delivery and acceptance of the articles after examination, or an opportunity to examine them, is a consent or agreement that the articles correspond with the contract, and precludes a recovery for any defects which may exist. The vendee must immediately rescind the contract, and return, or offer to return, the goods. He cannot retain the property, and afterwards claim damages, by action or recoupment, for inferior quality. Such a transaction differs from a sale with warranty, in that the stipulated quality is a part of the contract itself, and not collateral to it."

In Mason v. Smith, 130 N. Y. 477, 29 N. E. 749, we have an approval and application of the same rule:

"The contract for the sale and delivery of the gloves was executory. It became the duty of the defendants on the arrival of the goods, or within a reasonable time thereafter, to examine them, and determine whether or not they were of the kind and quality ordered, and, if they were found not to comply as to quality and kind, to promptly rescind the contract, and either return, or offer to return, the goods to the plaintiffs."

And in this last case it was further held that a letter from the defendants to the plaintiffs, stating that they were not satisfied with the goods, and that they would rather return them than place them on sale, as the goods did not open up as the defendants thought they should, and that they would prefer not to accept them, did not amount to a rescission of the contract.

This duty to at once rescind the contract, and offer to return the goods, being a condition precedent to the right of the plaintiffs to recover, it would seem, upon the evidence in this case, that the plaintiffs not only failed to prove such a rescission and offer to return the goods, but proved such a course of dealing with the goods, after the discovery of a defect, as to preclude them from maintaining any action against the defendants, either for the damages sustained because of the failure of the goods to comply with the contract, or to recover back the consideration money paid. We will assume that the mere acceptance of the peas, when delivered upon the dock, was not such an acceptance as would preclude the plaintiffs from subsequently rescinding the contract, when it appeared that the goods were not of the quality called for by the contract, and that the plaintiffs would have a reasonable time to examine and ascertain whether the goods were of the quality called for by the contract, as it was impossible to tell of the condition of the peas without opening the cans, and that each can opened was sacrificed, as they were not available after being opened. The peas, however, arrived on November 29, 1893. The plaintiffs testified that they first learned of their quality late in December, 1893, or early in January, 1894. At this time but a small portion of the peas had been sold by the plaintiffs, the greater part of them still remaining in their possession, and from that time on there is no dispute that the plaintiffs had full knowledge of the condition of the peas, and of the fact that they were not of the quality called for by the contract. The plaintiffs had then the option of rescinding the contract, and of returning the peas to the defendants, and recovering back the money that they paid, or retaining the peas, as a compliance with the contract. They could not, however, do both. The plaintiffs' evidence shows that the plaintiffs insisted upon retaining the peas, did retain and dis-

pose of them, and receive the proceeds. No unequivocal offer to rescind the acceptance and to return the peas was ever made to the defendants. The conditional offer, which was made long subsequent, was made too late, but, if it had been made in time, it was not an absolute offer of rescission, with a tender back of the goods. The books are full of cases, which it is not necessary to cite, that show that any act of a vendee, treating the goods thus delivered as his own, is inconsistent with a rescission, and is an election to retain the goods, from which a liability for the contract price follows. Thus, upon the undisputed facts, it is entirely clear that plaintiffs were not entitled to recover. This being so, it is unnecessary to examine the various exceptions which appear upon the record, as the dismissal of the complaint was right.

The judgment appealed from should be affirmed, with costs. All concur; PATTERSON, J., in result.