Kona Simon et al., on Behalf of Themselves and All Others Similarly Situated, Respondents-Appellants, v Cunard Line Limited, Appellant-Respondent.

First Department, June 12, 1980

## APPEARANCES OF COUNSEL

*Michael J. Murphy* of counsel *(Stephen J. Crimmins* and *Bruce D. Angiolillo* with him on the briefs; *Lord, Day & Lord,* attorneys), for appellant-respondent.

*Donald A. Derfner,* attorney *(Lance R. Frank* and *Kevin L. Smith* with him on the brief), for respondents-appellants.

**OPINION OF THE COURT**

FEIN, J.

Plaintiffs, nonresidents of the State of New York, sue on their own behalf and on behalf of other passengers aboard the *Queen Elizabeth II* (QE II) during the 1977-1978 Christmas and New Year's holiday cruise, for damages resulting from alleged inferior service and accommodations aboard the luxury liner and a change in the itinerary during the cruise.

Defendant appeals from an order which granted plaintiffs' motion for class action certification, excluding from the class 188 passengers who had received and accepted travel or other credits issued by defendant. Plaintiffs rely in part upon representations made by defendant that the QE II was "the greatest ship in the world" and that "everything about the Queen lives up to the high standards you would expect aboard the greatest ship in the world." Charging that the representations were false, plaintiffs seek to represent a class consisting of the 1,658 passengers aboard the vessel during the cruise. Plaintiffs have cross-appealed from the order to the extent that Special Term refused to certify as part of the class the 188 passengers to whom travel or other credits were issued and accepted.

Plaintiffs, who were passengers occupying a first-class luxury cabin, allege that the air conditioning did not function properly during the cruise, and that there was a lack of fresh water aboard the ship which adversely affected the quality of service and resulted in a change in the ship's itinerary to obtain the fresh water. The complaint alleges that there was no fresh drinking water available at the dinner tables or in the rooms and there was rusty water in the bathrooms. The lack of fresh water was allegedly due to improper preparation of the desalinization facilities, caused by premature removal of the QE II from dry dock, with knowledge that it was improperly maintained, serviced and overhauled when the cruise commenced. These acts allegedly resulted in the malfunction of the evaporator used to distill fresh drinkable water and led to interruptions in the laundry service so that towels were changed only upon request, table linens and napkins remained soiled, and bed clothes were not freshened at normal intervals. This malfunction also required a change in the itinerary, eliminating two ports of call, St. Vincent and St. Maarten. Curacao and San Juan were substituted in order to take on fresh water otherwise unavailable.

The ship reached certain ports at odd hours, allowing inade-

quate time for sightseeing and shopping. The ship was allegedly dirty throughout the cruise, with decks and outdoor buffets uncleaned, chairs and floors in the dining rooms dirty and littered with crumbs, tablecloths and table covers torn and shabby, and the crew with food-stained and dirty uniforms were ill-trained and indifferent to passengers' needs. The cruise began in New York City on December 20, 1977, and ended there on January 3, 1978. Two hundred and ninety-six persons complained of the deficiencies.

The defendant offered to compensate each passenger who had complained, in an amount equal to 50% of the price paid for passage.

In granting class action certification, Special Term found the action met each of the prerequisites contained in CPLR 901: (1) the class is so numerous that joinder of all members whether otherwise required or permitted is impracticable; (2) there are questions of law or fact common to the class which predominate over any questions affecting only individual members; (3) claims or defenses of the representative parties are typical of those of the class; (4) the representative parties will fairly and adequately protect the interests of the class; (5) the class action is superior to other available methods for fair and efficient adjudication of the controversy.

Special Term found insignificant the fact that different passengers had embarked and disembarked at different ports during the cruise, rejecting defendant's assertion that there were three different cruise programs involved. The number of passengers during the cruise varied from 867 to 1658. Complaints were allegedly received from only 296, of which 188 were adjusted.

Both briefs refer to material dehors the record which reveals that both sides failed to adduce the pertinent facts by persons with requisite knowledge on the motion and cross motion before Special Term. Notable is the absence of any affidavit by either of the nonresident plaintiffs or any other passenger aboard the ship sufficient to support a determination as to the existence of the prerequisites for class action. Factual recitations in defendant's brief rely on alleged facts not contained in the record and never disclosed before Special Term. Except for an affidavit by defendant's senior vice-president relating to the settlement proposal, both parties have relied upon the affidavits of counsel without knowledge of the facts. Defendant claimed at Special Term that the voyage

actually consisted of three separate but contiguous cruise programs. Its brief on appeal asserts that the trip consisted of nine separate vacation packages. Defendant contends that class action determination should be influenced by the fact that different passengers boarded the vessel at different ports of call. Defendant asserts, for the first time on appeal, that different passengers received different advertising brochures depending upon their country of citizenship, and that class action determination should also be influenced by the fact that some of the passengers had sailed on Cunard ships in the past and on this voyage experienced different accommodations on this package trip.

Defendant does not deny inferior quality of service except for so much of the complaint as charges inadequate performance by the crew. Defendant admits there was an insufficient supply of water because of mechanical failure, and that this caused some of the other problems including the change in itinerary. The length of time of the cruise remained as advertised and booked.

Again departing from the record, defendant asserts that in addition to the 188 who had accepted credits issued by Cunard at the time of the service of the answer, 37 more have settled their claims since the motion, and all but 28 of the remaining 71 have been offered travel credits. The 28 have not responded to Cunard's offer.

As plaintiffs suggest, reference to such matter dehors the record is improper. This serves to underline the insufficiency of the record at Special Term to establish the nature and size of the class. Plaintiffs assert that Special Term erred in excluding from the class the 188 passengers found by the court to have accepted travel or other credits, based upon the affidavit of defendant's senior vice-president. Although plaintiffs cross-appeal from the exclusion of these 188 passengers from the class, plaintiffs offer no proof other than the bare affidavits of counsel in opposition.

Defendant claims that class action status should have been denied because of the settlement, and in addition asserts that the class cannot prevail on the merits because certain provisions in the passage contract provide defenses. In particular, paragraph 3(b) of the contract purports to relieve the owner of liability from any defect or breakdown in the ship. Paragraph 14 purports to relieve the company of liability for any loss, damage or delay occasioned by any cancellation of any sched-

uled call at any port, other than a pro rata return. If the trip is shortened from the advertised or scheduled duration, paragraph 23 provides that no representations in advertisements or booklets shall affect or modify the liability of the defendant.

■ These defenses which go to the merits are inappropriate for disposition at this stage of the action. To the extent that inquiry into the merits of a claim is appropriate before certification of a class, the inquiry is to determine whether on the surface there appears to be a cause of action for relief which is neither spurious nor sham (*Reiken v Nationwide Leisure Corp.*, 75 AD2d 551; cf. *Seligman v Guardian Life Ins. Co. of Amer.*, 59 AD2d 859; *Gottlieb v March Shipping Passenger Servs.*, 67 AD2d 879).

■ ■ The provision in the contract that notices of claim within 40 days after termination of the voyage are required cannot bar class certification. Defendant admits that at least 296 complaints were registered. There is perhaps more merit to defendant's assertion that no actionable claim exists if reliance is solely upon the representation that the QE II was "the greatest ship in the world" and that "everything about the Queen lives up to the high standards you would expect aboard the greatest ship in the world." Such statements may be considered as mere puffing and not actionable (*Strauss v Salzer*, 58 Misc 573; *Waeber v Talbot*, 43 App Div 180, affd 167 NY 48; *League Cycle Co. v Abrahams*, 27 Misc 548; *St. Hubert Guild v Quinn*, 64 Misc 336; *Harburger v Stern Bros.*, 189 NYS 74).

■ Even assuming that such statements are actionable, the individual issues respecting knowledge of and reliance upon the representations would preclude class action determination (*Strauss v Long Is. Sports*, 60 AD2d 501; *Ross v Amrep Corp.*, 57 AD2d 99, app dsmd 42 NY2d 856; *MFT Inv. Co. v Diversified Data Servs. & Sciences*, 52 AD2d 761, mot for lv to app dsmd 40 NY2d 845).

■ However, it is plain that liability is not predicated solely upon such representations. The essence of the complaint is in the nature of breach of contract for inadequate and inferior services aboard the ship, insufficiency of the air-conditioning system, the lack of fresh water supply, the dirty and unhealthy conditions alleged, the change in itinerary, the substitution of ports of call and arrival at odd hours, and the resulting delay and inconvenience to passengers. A clear question is

raised as to whether the passengers received the charter contracted for. Sufficient is shown to enable us to conclude that there exist common questions of law and fact which predominate over individual issues. Although the damages sustained may raise individual issues inappropriate for class action treatment, such individual issues need not preclude class action treatment at least as to liability.

That different passengers boarded the vessel at different ports of call is immaterial. Plaintiffs, who are residents of Florida, boarded the vessel in Florida. One common fact shared by all is the nature of the conditions on board this ship during the time they were passengers. There is also a common issue as to the allegation that defendant prematurely and negligently terminated drydock repair and maintenance, causing the inferior conditions and quality of service. Such a claim provides a foundation for class action (*Guadagno v Diamond Tours & Travel,* 89 Misc 2d 697). It is not necessarily dispositive that different passengers had different accommodations, nor that the majority did not formally complain. At least at this juncture there appears to be no reason to segregate into different classes passengers who booked or were afforded different travel accommodations or those who ate in the different dining rooms on the ship. All of the passengers were on one ship, suffering common complaints, unlike cases such as *Dupak v Nationwide Leisure Corp.* (70 AD2d 568) and *Klakis v Nationwide Leisure Corp.* (73 AD2d 521) where different hotel accommodations were afforded. It is noted that here, too, the support for the allegations in these respects is in the form of counsel's affidavit, not one having knowledge of the facts.

However, there is plainly as yet no demonstration of the size of the class which has and is prepared to assert a claim pursuant to CPLR 901 (subd a, par 1) which requires a determination that the class is so numerous that joinder of all members is impracticable. Considering the previously noted variation in the figures as to the number of passengers, the number of asserted claims and the number settling, it may well be that the number who have claims is so few as to preclude class action. Defendant asserts that only 71 potential claims remain. In view of the insufficiency of the record to determine the nature and size of the purported class, class action should not be granted until there has been discovery as to the nature and size of the class (*Dupack v Nationwide*

*Leisure Corp., supra; Klakis v Nationwide Leisure Corp., supra;* see *Reiken v Nationwide Leisure Corp.,* 75 AD2d 551, *supra).*

The record does not establish whether there are sufficient, or indeed any, passengers subject to personal jurisdiction in New York. As noted, the plaintiffs are nonresidents who reside in Florida. We have previously commented upon the unresolved problem of the extent of State court jurisdiction with respect to nonresident members of a class *(Tanzer v Turbodyne Corp.,* 68 AD2d 614, 622; *Gottlieb v March Shipping Passenger Servs.,* 67 AD2d 879, *supra).* The exercise of a State court's authority over an individual requires the presence of certain minimal contacts with the State *(Rush v Savchuk,* 444 US 320; *International Shoe Co. v Washington,* 326 US 310). Although our courts have not resolved the issue, a New Jersey court has denied as inappropriate class action certification on the basis that only 32 of the 295 persons claimed to constitute a class were residents of the State *(Feldman v Bates Mfg. Co.,* 143 NJ Super 84).

We do not resolve the issue at this juncture. Discovery proceedings are necessary to determine the nature and size of the class. In conducting such proceedings, inquiry should be made as to whether nonresidents of the State are within the class sought to be protected. This record does not disclose such information. Discovery may well disclose that New York or non-New York potential class members have already settled their claims. Full consideration of the issue is more appropriate after completion of disclosure. Depending upon the facts developed, if the plaintiffs, after appropriate discovery, make further application for class certification, they are directed to address the constitutional issue on renewal of the motion for class action status. In the event of such application both parties are directed to complete the record so as to avoid reference on any future appeal to matters dehors the record.

The order of the Supreme Court, New York County (SCHWARTZ, J.), entered May 7, 1979, which granted plaintiffs' motion for class action certification, excluding from the class 188 passengers who had received and accepted travel or other credits issued by defendant, and denied defendant's cross motion to deny class action status, should be reversed on the law and the facts and in the exercise of discretion, plaintiffs' motion for class action status should be denied and defendant's cross motion to deny class action status should be

granted, without costs and without prejudice to plaintiffs' right to make an appropriate application after limited discovery as to the nature and size of the class including the extent to which the potential class purports to include nonresidents not subject to jurisdiction in this State.

BIRNS, J. P., MARKEWICH, LUPIANO and CARRO, JJ., concur.

Order, Supreme Court, New York County, entered on May 7, 1979, reversed, on the law and the facts and in the exercise of discretion, plaintiffs' motion for class action denied and defendant's cross motion to deny class action granted, without costs and without disbursements, and without prejudice to plaintiffs' right to make an appropriate application after limited discovery as to the nature and size of the class, including the extent to which the potential class purports to include nonresidents not subject to jurisdiction in this State.