## Bucci v. Cunard Line Limited

*David F. Binder, Alan M. Feldman,* for plaintiffs.
*E. Alfred Smith, Edward J. Charlton,* for defendant.

WRIGHT, *J.,* May 13, 1985—This is a class action brought on behalf of fare-paying passengers aboard the S.S. Queen Elizabeth II during a cruise which departed on May 12, 1984 from Philadelphia and returned to Philadelphia on May 20, 1984. Plaintiff alleges that as a result of a power failure which occurred during the cruise, passengers were forced to do without food, water, toilet facilities, air conditioning and other services. The cruise was to include stops in Bermuda, St. Thomas and St. Maarten. However, due to this power failure, the stop in St. Maarten was eliminated. Plaintiff asserts that the power failure was caused by the negligence and carelessness of Cunard, the unsafe and unseaworthy condition of the S.S. Queen Elizabeth II and was in breach of the passage contract and accompanying representations concerning the nature and quality of the cruise. Cunard, however, has denied these claims and asserts that the breakdown was unforeseen, unfortunate, not due to any negligence or carelessness on its part, or any unseaworthiness of its vessel and was not a breach

of its passage contracts with the passengers. Prior to the end of the cruise, Cunard offered the passengers either a 15 percent refund of their fare or a 30 percent voyage credit on future cruises. Of over 1300 fare-paying passengers aboard, more than 900 have accepted this offer.

A motion for certification of this matter as a class action has been filed under Pa.R.C.P. 1707(a). The pleadings have now been closed and discovery with respect to the class action issues has been completed. The motion for class certification has been thoroughly briefed, and both parties having waived their right to oral argument, the issue is now ripe for disposition. After consideration of the pleadings, depositions, affidavits and other evidence and the applicable statutory and case law, the court makes the following

## FINDINGS OF FACT

1. This action arises out of a cruise on the S.S. Queen Elizabeth II which departed from Philadelphia on May 12, 1984 and returned to Philadelphia on May 20, 1984.

2. As a result of a power failure which occurred on May 16, 1984, plaintiff and many other passengers suffered many inconveniences and displeasure, including the absence or limitation of food, water, toilet facilities, air conditioning and other fundamental services.

3. The cruise was to include stops in Bermuda, St. Thomas and St. Maarten.

4. The St. Maarten stop was eliminated due to the power failure.

5. Prior to the end of the cruise, Cunard offered passengers either a 15 percent refund of their fare or a 30 percent voyage credit on future cruises.

6. There were approximately 1324 fare-paying passengers aboard the cruise ship.

7. Approximately 943 fare-paying passengers have accepted this offer and signed releases relinquishing their rights to any future claims against Cunard.

8. Approximately 381 fare-paying passengers have not settled their claims, i.e. these passengers have not signed a release of any kind.

## DISCUSSION

The sole issue before this court is whether this case satisfies the prerequisites for certification as stated in Pa.R.C.P. 1702. Inquiry into the merits of this action are prohibited. Pincus v. Mutual Assurance Co., 457 Pa. 94, 321 A.2d 906 (1974); Piltzer v. Independence Federal Savings and Loan Association, 456 Pa. 402, 319 A.2d 677 (1974). Furthermore, a "decision in favor of maintaining a class action should be liberally made". Cox v. City of Chester, 76 Pa. Commw. 446, 464 A.2d 613 (1983) citing Bell v. Beneficial Consumer Discount Co., 241 Pa. Super. 192, 360 A.2d 681 (1976).

Pa. Rule of Civil Procedure sets forth five prerequisites to the maintenance of a class action. First, the moving party must prove numerosity. Next, there must be a common question of fact or law. The representative plaintiff must then prove that her claim is typical of the class. Also, the class must be adequately represented. Finally, the method of class action must be a fair and efficient way to resolve the controversy.

We first examine the numerosity requirement. Rule 1702(1) requires that the class be so numerous that joinder of all members is impracticable. In determining numerosity, it is not necessary to prove

the exact number in the class if it is defined with some precision and there appears to be more members than it would be practicable to join. Janick v. Prudential Insurance Co. of America, 305 Pa. Super. 120, 451 A.2d 451 (1982).

In this case there were 1324 fare-paying passengers aboard the vessel. Approximately 943 fare-paying passengers have settled their claims. This leaves approximately 381 fare-paying passengers who have not settled their claims. This number is more than sufficient to satisfy the numerosity requirement of Rule 1702(1). See Metropolitan Hospital v. Commonwealth, Dept. of Public Welfare, 21 Pa. Commw. 116, 343 A.2d 695 (1975) (330 persons sufficient); Floyd v. Philadelphia (No. 2) 8 D.&C. 3d 380 (1978) (194 persons sufficient); Jones v. Zimmerman, 11 Leb. Cty. L.J. 391 (1967) (82 persons sufficient).

Defendants argue, however, that since the court cannot exercise jurisdiction over passengers who were not residents of Pennsylvania, the numerosity requirement has not been met.[1] This is completely contrary to the court's ruling in Janick, supra. The court stated:

"Our Supreme Court has held that a common pleas court may exercise jurisdiction over absent class members who are Pennsylvania residents, as well as those non-residents who submit themselves to its jurisdiction".

Defendants further assert that because only one formal action has been commenced against Cunard, there is a lack of interest among class members.

---

1. While the total number of settling passengers is disputed, defendant admits in his brief that 104 of the non-settling passengers are Pa. residents or booked through a Pa. travel agent. Clearly, this number is in and of itself sufficient to satisfy the numerosity requirement.

However, there is no provision under the class action laws requiring that a minimum number of claims be received before certification will be granted. See e.g. Simon v. Cunard Line Limited, 75 A.D.2d 283, 428 N.Y.S.2d 952 (1980) (holding that a large number of formal complaints was not necessary to certification, especially where "all the passengers were on one ship, suffering common complaints"). Even so, Cunard's own records reveal that they received many letters and calls of complaint from discontented passengers.

Pa. Rule 1702(2) next requires that there be questions of law and fact common to the class. Here questions of fact are common. Indeed, Cunard, in its brief, acknowledges that "all of those on the QE2 underwent the *same experience,* i.e., they were all board the same vessel at the time of the power failure ... (Emphasis added)." All passengers were similarly affected by the lack of food, water, toilet facilities, air conditioning and other essential services. Furthermore, though a few passengers thought the inconvenience to be minimal, this does not defeat certification of the class where a larger number of passengers felt otherwise.

Additionally, there are common questions of law which predominate. The primary issue is Cunard's duty to provide the essential services contracted for and expected. Plaintiff has thus asserted both claims in contract and in tort (negligence arising from Cunard's failure to properly maintain the vessel). Although, two sets of passage contracts were used for making reservations through Cunard offices in the United States and the United Kingdom, the court stated in Janick, supra:

"Claims arising from interpretations of a form contract generally gave rise to common questions ... '(C)lass actions may be maintained even when

the claims of members of the class are based on different contracts' so long as 'the relevant contractual provisions raise common questions of law and fact and do not differ materially'." Sharkus v. Blue Cross of Greater Philadelphia, 494 Pa. at 343, 431 A.2d at 886. Here, the language of both contracts is almost identical.

Defendant, however, asserts that mass tort or accident situations are not appropriate for class action treatment, citing a string of cases where courts have denied class certification in circumstances where a single act has resulted in injuries to a number of persons. See McDonnel Douglas Corp. v. United States District Court, 523 F.2d 1083 (9th Cir. 1975);[2] cert. denied 425 U.S. 911 (1976); Causey v. Pan American World Airways, 66 F.D.R. 392 (E.D., Va. 1975); Hobbs v. Northeast Airlines, Inc. 50 F.R.D. 76 (E.D., Pa. 1970); In Re Federal Skywalk Cases, 680 F.2d 1175 (8th Cir. 1982). These cases are clearly distinguishable on the facts, as they involve airplane crashes and product defects where the inherent complexities of establishing liability and the damage questions require the pursuit of individual causes of actions.

Thus, the court stated in Causey v. Pan American Airways, Inc., 66 F.R.D. 392, 397 (E.D., Va. 1975):

"It is the court's view that under some circumstances mass accident litigation may and ought to be maintained as a class action. Perhaps the paradigm situation in which such treatment would be appropriate is one where (1) the class action is limited to the issue of liability, (2) the class members

---

2. Pennsylvania courts have held it to be appropriate to consider federal precedent in analyzing and interpreting the Pa. Rules of Civil Procedure on class actions. McMonagle v. Allstate Ins. Co., 460 Pa. 159, 331 A.2d 467 (1975).

support the action (3) the choice of law problems are minimized by the accident occurring and/or substantially all plaintiffs are residing within the same jurisdiction. . .".

Giving consideration to the above three factors, we find that (1) liability is the major issue (2) there is ample evidence, in the form of letters and affidavits that the class members support the action and (3) that the choice of law problems are minimal. (Thus rejecting defendant's argument that class actions are not permitted whenever class members are from different jurisdictions. See Janick, supra, In Re "Agent Orange" Product Liability Litigation, 506 F.Supp. 762 (E.D., N.Y. 1980). Also, in Floyd v. City of Philadelphia (No. 2), 8 D.&C. 2d 380 (1978), the court in certifying a class of 194 persons exposed to chlorine gas arising from a leak at a water treatment facility stated:

"This court is, therefore, firmly persuaded that the instant litigation represents a proper case for class action treatment, certainly as to the issue of liability, at least. Plainly, there is a common question of fact predominate over all others; that is, how this leak of a harmful gas occurred and by whose fault. Every member of the asserted class has a common stake in this issue. There are no apparent questions of causation, intervening or superceding cause, of whether or not the leak of the chlorine gas was a substantial factor in the harm suffered by the class members . . . In the case at bar, there is no plausible indication of the existence of defenses against the claims of some but not all members of the class". Here, the injuries are clearly identifiable, of a similar nature and liability is the overriding issue.

Class actions have also been granted where commonality as to liability issues was found in spite of any potential conflict among class members over

shares of damages. See American Trading and Products Corp. v. Fishbach & Moore, Inc., 47 F.R.D. 155 (D.C., N.D. Ill. (1969)).

Moreover, common questions have been found to predominate in other class actions litigations instituted on behalf of cruise ship passengers. See, e.g. Kornberg v. Carnival Cruise Lines, Inc. 741 F.2d 1332 (11th Cir. 1984) (common factual questions presented by toilet malfunction); Cada v. Costa Lines, Inc., 547 F.Supp. 85 (N.D. Ill. 1982) (fire on ship); Simon v. Cunard Line, Ltd., 75 A.D.2d 283, 428 N.Y.S.2d 952 (1980) (Inadequate air conditioning, lack of fresh water and change in itinerary); Bentkowski v. Marfuerza Compania Maritima, S.A., 70 F.R.D. 401 (E.D., Pa. (1976)) (food and/or water poisoning of some passengers); Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558 (S.D. Fl. 1974) (same factual predicate as Bentkowski.)

Defendants, further rely on Yollon v. Holland American Cruises, Inc., 1984 A.M.C. 542; 97 A.D.2d 720 (1983), a New York State trial court opinion. There, a passenger sought to bring a class action against, inter alia, the owner of a cruise vessel alleging fraud, breach of contract, negligence and false advertising because of missed shopping opportunities at one port and the elimination of another port during the cruise. The court denied certification stating that there were no common questions of law or fact which predominated over individuals since the testimony of each class member would be necessary to ascertain the importance of the missed shopping opportunities. Here, unlike Yollin, each and every passenger suffered through a disruption of essential services. Thus, there exists common questions of law and fact.

Rule 1702(3) requires that the claims of the representative party be typical of the claims of the

class. Here, plaintiff Elena Bucci, underwent the same inconveniences and physical deprivations as the other passengers on the ship. Like the other passengers, Mrs. Bucci was compelled to do without suitable food, water, toilet facilities, air conditioning and other necessary facilities. Similarly, these passengers were forced to sleep outside on the deck due to the power failure. Mrs. Bucci, like the other passengers, was unable to visit St. Maarten as planned. Surely these claims are typical of the entire class.

Even though there may be some minor differences in the individual damages reflected by the passage price paid by each passenger, these differences do not mitigate against class action treatment. See Ross v. Shawmut Development Corp., 460 Pa. 328, 333 A.2d 751 (1975); Floyd v. Philadelphia (No. 2), 8 D.&C. 3d (1978). Furthermore, in Kornberg v. Carnival Cruise, Lines, Inc., 741 F.2d 1332 (11th Cir. 1984), the court of appeals, in holding that plaintiff's claims regarding the breakdown of the sanitary system were "typical", stated:

"A class representative's claim or defenses must be typical of the claims of defenses of the class . . . in other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. *Typicality, however, does not require identical claims or defenses.* A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class . . .

Judged by this standard, plaintiffs clearly present claims typical of the class. The cause of action arises from a single event and there is no variation in legal theory. That plaintiffs may have suffered greater damage than other passengers because of the severity of the problem with their toilet does not render them atypical. Differences in the amount of damages between the class representative and other class members does not affect typicality." (Emphasis added). Here, the claim and defenses arise from the same event, the power failure aboard the QE2, Consequently, since Mrs. Bucci's claims are not substantially different from those of other class members and since the defenses available are not unique to her, plaintiff's claims herein are typical of the entire class.

Next, Rule 1702(4) requires that the representative party fairly and adequately assert and protect the interests of the class. In determining the adequacy of her representation, the court must consider (1) whether counsel for the representative party will adequately protect the interests of the class; (2) whether the representative party has a conflict of interest in maintaining the action; and (3) whether the representative party has or can acquire adequate financial resources to prosecute the action.

In this action, Mrs. Bucci has submitted an affidavit certifying the adequacy of her financial resources and no problems seem to exist with counsel advancing costs. Furthermore, this court rests assured that plaintiff's counsels are experienced in class action litigation and will vigorously represent the class interest. Piel v. National Semiconductor Corp., 86 F.R.D. 357 (E.D., Pa. 1980). Defendants do not challenge this but contend that Mrs. Bucci's interest conflict with those of the class. In support of this contention, defendant states that Mrs.

Bucci's interests are adverse to those passengers who have settled their claims, to those passengers whose rights are governed by the United Kingdom form of contract, and to those passengers who enjoyed the cruise and to whom the itinerary and inconveniences were unimportant.

However, the issue is not whether passengers who have released their claims are happy with plaintiff's conduct of this litigation, but whether plaintiff has interests which are antagonistic to other class members which will prevent her from vigorously prosecuting the action. Lirtzman v. Spiegel, Inc., 493 F. Supp. 1029 (N.D., Ill. 1980). Moreover, "(a) naked allegation of antagonism cannot defeat class certification; there must be an actual showing of a real probability of a potential conflict which goes to the subject matter of this suit". Gilchrist v. Bolger, 89 F.R.D. 402, 409 (S.D., Ga. 1981), quoting In Re South Central States Bakery Products, 86 F.R.D. 407 (M.D., La. 1980).

There is nothing in the record which suggests that plaintiff would be unsuitable as a class representative or that a conflict of interest exists.

The final prerequisite for the maintenance of a class action is that it be a fair and efficient method for adjudication of this controversy. Rule 1708(a) requires that (1) there be no significant management problems posed by the litigation; (2) common questions of law and fact predominate over questions affecting only individual members; (3) a class suit would minimize the risks of inconsistent adjudications; (4) no other litigation has been commenced; (5) the forum be appropriate for the litigation of the claims of the entire class; (6) the complexities of the issues and the expenses of litigation of separate claims of individual class members; (7) the amounts likely to be recovered by individual

class members is relatively small, not justifying independent litigation.

In addressing these criteria, the court concludes that each has been met. First, there are no unusual or significant management problems posed by this litigation. Defendants assert that our judicial system would be burdened by class action litigation commenced by passengers who are not residents of Pennsylvania. To the contrary, the issues relating to liability are well defined and this forum is the appropriate place to house this litigation since the cruise departed and returned here and it includes more class members than any other location.

Defendant also alleges that the issues of liability and damages are so intertwined that each class member's claim would have to be tried individually. However, there are a variety of procedural devices to deal with issues relating to the award of damages. "The court should rely on the ingenuity and aid of counsel and upon its plenary authority to control the action to solve whatever management problems the litigation may bring". Janick, supra. We found defendant's concern in this area unfounded.

The next criteria is that common question of law and fact predominate over questions affecting only individual members. As discussed previously, questions of law and fact are similar in this action, i.e. how and why the power failure occurred, duty of Cunard to provide essential services to each farepaying passenger, the passengers right to recover, and Cunard's operation and maintenance of the vessel.

This class action law suit will also obviate the risk of inconsistent adjudications which would (a) confront defendant with incompatible standards of conduct, or (b) as a practical matter be dispositive of the interests of other members not parties to the adjudi-

cations. We conclude that separate actions would entail enormous waste and inefficiency and would work to the detriment of the litigants as a practical matter.

Pa. R.C.P. 1708(a)(4) requires that this court consider the extent and nature of any litigation already commenced. The record indicates that litigation was instituted by four passengers in Texas. Cunard has settled their claims for travel credits equal to their full sea passage and airplane fare, having a value of $2,000 for each passenger. These passengers would, of course, be excluded from the class. No other pending litigation has been identified.

Next, Rule 1708(a)(5) requires that this forum be appropriate for the litigation of the claims of the entire class. Although the passengers aboard the QE II were representative of many states, the record indicates that most of the passengers were residents of Pennsylvania (approximately 70 percent). Also, the cruise both departed from and returned to Philadelphia. Moreover, there is no other forum with a closer nexus and Cunard does not challenge jurisdiction or venue in this litigation.

Furthermore, the complexities of the issues and the expenses of litigation of separate claims of individual class members excludes separate actions by individual class members. Because discovery can be expensive and because the claims of individual passengers are relatively small, it is unlikely that widespread prosecution will occur. Thus, the class action device is the most appropriate manner in which to consolidate a large number of individual claimants into a group which can afford the expense of litigation.

Lastly, Pa. R.C.P. (a)(5) requires that the amounts likely to be recovered by individual class

members be relatively small, not justifying independent litigation. Here, the amounts likely to be recovered by individual class members justify a class action.

Accordingly, this court concludes that a prima facie case for certification has been established by plaintiff and absent any showing why certification should not be granted, plaintiff's burden has been met. Janick, supra.

We, therefore, make the following

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and subject matter of this action.

2. The class is so numerous that joinder of all members is impracticable.

3. All members of the class suffered from the power failure occurring on defendant's vessel and as such there are questions of law and fact common to the class.

4. The extent and nature of other litigation already commenced by members of the class involving any of the same issues, consisting of one action only[3] (as presently known to the court), is not so great as to preclude prosecution of the great bulk of other claims by means of class action.

5. Common questions of law or fact predominate over any question affecting only individual members.

6. In view of the complexities of the issues and the expenses of litigation, the separate claims of in-

---

3. U.S. District Court for Northern District of Texas, Dallas Division, brought on behalf of four passengers, filed on October 12, 1984, Cunard settled the passengers' claims for travel credits equal to their full sea passage and airplane fare, having a value of $2,000 for each passenger.

dividual class members are insufficient in amount to support separate actions.

7. The claims of Elena Bucci are representative and are typical of the claims of the class.

8. The class action provides a fair and efficient method for adjudication of the controversy.

9. The difficulties likely to be encountered in the management of the action as a class action are not so great as to be forbidding.

10. The amount which may be recovered by individual class members is not likely to be so small in relation to the expenses and effort of administering the action as to render a class action unjustifiable.

11. This particular forum is appropriate for the litigation of the claims of the entire class.

12. Elena Bucci has no conflict of interest in maintaining the class action that would inhibit her ability to fairly and adequately assert and protect the interests of the individual class members.

13. The facts and law bearing on the issue of liability are so nearly common to all claimants as to require all claimants to constitute a single class for determination in a trial of that issue.

14. Elena Bucci has demonstrated and established a willingness to acquire adequate financial resources to go forward with this action in a manner so as to protect the class in its entirety.

15. No specific number of members of the class must be maintained to sustain a class action; therefore this court concludes that the numbers shown by plaintiff constitute sufficient complexity so as to be well served by the method of a class action.

16. The rights of the plaintiff, Elena Bucci, as determined against this defendant will be dispositive of all other members of the class and those claims can be most economically settled by the device of a

class action which provides a fair and efficient method of handling this controversy.

17. To hear this matter as an individual action would clog the courts and create the possibility of varying adjudications with respect to individual class members.

18. The issues raised by plaintiff are those which would properly come before this court.

19. The attorneys for the representative parties will adequately represent the interests of the class.

20. Passengers who have settled their claims, i.e. where releases have been signed relinquishing their rights to any future claims against Cunard, are not included in this class.

21. Defendant has failed to make an adequate showing of why certification should not be granted.

22. Plaintiff has satisfied those prerequisites for certification as stated in the Pa. R.C.P. 1702 and is thus entitled to certification of this case as a class action.

23. The class shall consist of all farepaying pasengers on the cruise of the S.S. Queen Elizabeth II which departed from Philadelphia on May 12, 1984, excepting persons who have entered into valid settlements in which all further claims against Cunard Line Limited were expressly released.

24. Passengers who are not Pennsylvania residents must voluntarily submit themselves to the justification of this court.

We have, therefore, entered the attached order consistent herewith.

## ORDER

And now, this May 13, 1985, it is ordered and decreed that the within action may be maintained as a class action pursuant to Pa. R.C.P. 1710. Plaintiff

Elena Bucci is designated as the class representative. The class is defined as all persons who were fare-paying passengers on the cruise of the S.S. Queen Elizabeth 2 which departed Philadelphia on May 12, 1984, excepting persons who entered into valid settlements in which further claims against Cunard Line Limited were expressly released.

Members of the defined class who are not Pennsylvania residents shall be excluded unless they voluntarily submit themselves to the jurisdiction of this court by filing a written election to be included in the class which is received not more than 30 days after the certification notice is mailed to class members.

All other members of the defined class shall be included in the class action unless a member files of record a written election to be excluded from the class which is received not more than 30 days after the certification notice is mailed to class members.

It is further ordered that the parties shall confer in an effort to agree upon the content of the certification notice and the identity of all persons to whom the notice shall be mailed, and shall advise the court of the product of the parties' efforts within 20 days of the date hereof.