EDWARD I. KING et al., Individually and on Behalf of All Others Similarly Situated, Respondents, v CLUB MED, INC., et al., Appellants.

First Department, July 10, 1980

APPEARANCES OF COUNSEL

*Herbert Dicker* of counsel *(Wilson, Elser, Edelman & Dicker,* attorneys), for appellants.

*Robert D. Gould, P. C.,* for respondents.

## OPINION OF THE COURT

SANDLER, J.

In this action brought under CPLR article 9, plaintiffs, husband and wife, sue on behalf of themselves and members of a class defined as persons who contracted with the defendants and their agents for participation in a vacation travel package to a hotel and village known as "La Caravelle," located in the French West Indies, which covered the last week of July, 1977.

Three causes of action are set forth, one alleging contract violations, and two charging fraudulent misrepresentations. One of the fraud causes of action (the first), seeks punitive damages in addition to recovery of damages actually sustained. The other fraud action (the third), seeks in the alternative rescission and return of moneys paid to the defendants.

The defendants are in the business of marketing vacation travel packages to the general public. Through their agents and subagents, defendants solicit "membership" in the Club Mediterranee and market vacation travel packages. In brochures and promotional materials alleged to have been distributed and received by plaintiffs and other members of the class, defendants offered two distinctly different types of vacation sites. One type, designated as "classical villages", featured simple huts "with neither electricity nor plumbing". The second type, called "hotel villages", is described as buildings of permanent construction with private bathrooms and hot and cold water. La Caravelle, one of the latter type, was portrayed in defendants' promotional literature as a luxury hotel with modern air-conditioned rooms, private bathrooms and electricity.

Contrary to these explicit representations, it is alleged in the complaint that during the last week in July, 1977, the hotel at La Caravelle "had sporadic electricity, no air conditioning, either no hot or cold running water or intermittent hot or cold running water and that the toilet and other sanitary facilities in the rooms at the hotel were either not operational or sporadic." The complaint further alleges that for a long period of time prior to the departure of the tour in question, the defendants knew that the facilities at La Caravelle were not in accordance with the written representations that had been made, and failed to inform the plaintiffs and other members of the tour of the true conditions.

The principal issue on this appeal is presented by defendants' contention that fraud actions are generically unsuitable for class certification under CPLR article 9. We find no support in article 9 for this claimed exclusion. The issue of class certification for actions sounding in fraud, as in any other action, should turn on compliance with the prerequisites enumerated in CPLR 901 and consideration of the factors specified in CPLR 902. So tested, we agree with Special Term's determination to grant the motion herein for class certification.

The rule was, of course, otherwise prior to the adoption of article 9, effective September, 1975. (See, e.g., *Ballen v Storch Int. Asti Tours,* 46 AD2d 643.) The holding in *Ballen* was consistent with the basic rules that had developed over a century in interpreting a statute first enacted in 1849, rules that came to be considered widely as unduly restrictive and unsuitable to modern needs.

Notably, in *Moore v Metropolitan Life Ins. Co.* (33 NY2d 304, 313 [1973]), the Court of Appeals described as urgent the need for new class action legislation "in light of the general and judicial dissatisfaction with the existing restrictions on class action which in many instances may mean a total lack of remedy, as a practical matter, for wrongs demanding corrections." (See, also, Homburger, State Class Actions and the Federal Rule, 71 Col L Rev 609.)

In recommending the bill eventually enacted as CPLR article 9, the Committee to Advise and Consult with the Judicial Conference on the Civil Practice Law and Rules described the then existing law, and its judicial interpretation, in the following terms:

"The present provision has remained in force without sub-

stantial change since the addition of its predecessor to the Field Code (L. 1849, ch. 438) * * * Under the present law, unless the subject matter of the controversy is a limited fund or specific property, or the relief sought is common to the class in the sense that satisfaction of the individual claims before the court also automatically satisfies the claims of all other class members * * * a class action can qualify only if a bond of 'privity' exists between the multiple parties forming the class * * *

"Aside from the undesirable vagueness of the term 'privity' * * * the privity doctrine, derived from ancient feudal law, prevents the use of the class action device in the adjudication of such typically modern claims as those associated with mass exposure to environmental offenses, violations of consumer rights, civil rights cases, the execution of adhesion contracts and a multitude of other collective activities reaching virtually every phase of human life. What is needed is a more flexible and functional approach which maintains judicial control, but does not unduly restrict the court within traditional legalisms and the passive role it habitates within the adversary system." (Eighteenth Ann Report of NY Judicial Conference, 1973, pp A35-A36.)

Article 9 could not be clearer on the precise issue before us. CPLR 901 (subd a) explicitly authorizes a class action where, in addition to other prerequisites, "2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members".

As has been frequently observed, this statutory language plainly authorizes class actions even where there are subsidiary questions of law or fact not common to the class. The point is underlined even more emphatically by CPLR 906 which provides:

"When appropriate,

"1. an action may be brought or maintained as a class action with respect to particular issues, or

"2. a class may be divided into subclasses and each subclass treated as a class."

That CPLR article 9 made available class action in fraud cases was the uniform view of the leading authorities. Typical was the observation of Dean McLaughlin: "The pre-1975 cases holding that a class action will not lie for fraud can no longer be regarded as controlling * * * If the question of fraud lies at

the heart of the class action and clearly preponderates over the uncommon questions, such as reliance and damages, a class action will now lie." (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C901:3, p 325.)

Identical views were expressed in Siegel, New York Practice (at p 179), who described the class action as "especially appropriate" when a single fraud has harmed a large number, and in Weinstein-Korn-Miller (NY Civ Prac, vol 2, par 901.08).

All of the cases that have previously addressed this question squarely are to precisely the same effect. (See *Guadagno v Diamond Tours & Travel,* 89 Misc 2d 697; *Dupack v Nationwide Leisure Corp.,* 70 AD2d 568; *Klakis v Nationwide Leisure Corp.,* 73 AD2d 521; *Strauss v Long Is. Sports,* 60 AD2d 501.)

It is true that in *Strauss v Long Is. Sports (supra,* p 507) the Second Department suggested a doubt as to the suitability of class action for a fraud claim where individual reliance would not be " 'substantially established by the very nature of the proofs on the issue of liability' ". Apart from that possible qualification, the decision as a whole clearly recognized the availability of class actions for fraud claims.

Central to the defendants' contention is the view that in this case, and implicitly in every fraud action, including as here cases in which identical representations are made in writing to a large group of people, the common issues of law and fact inherent in the claim of fraudulent material misrepresentations do not "predominate" over the allegedly individual issues of reliance.

This view is contrary to the lessons taught by judicial experience with fraud actions. It is the exceptional fraud action in which a substantial issue of reliance is presented in the face of a finding that there were fraudulent material misrepresentations. And that unusual situation arises most commonly in circumstances, not likely to be present here, in which the person claiming fraud is alleged to have separately investigated the facts represented or is otherwise shown to have had access to the relevant information.

Turning to the facts of this case, it is not plausible that persons confronted with the very distinct choice in the character of facilities presented in defendants' brochures would have opted to spend a July vacation on a tropical island in a "luxury" hotel with air conditioning, private bathroom and electricity, without having "relied" on those representations.

We think it improbable that a case-by-case evidentiary showing of reliance will be necessary with regard to any member of the class disclosed to have participated in the tour after reading defendants' promotional literature if the evidence establishes that the described representations were fraudulent.

The underlying issue here is perhaps best illuminated by consideration of CPLR 901 (subd a, par 5) describing as a prerequisite to a class action, a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Under the facts presented, we believe that a class action is not only superior to other available methods but may, as a practical matter, be the only available method for the determination of the issues raised. For the damages that may have been sustained by any single participant in the tour will almost certainly be insufficient to justify the expenses inherent in any individual action, and the number of individuals involved is too large, and the possibility of effective communication between them too remote, to make practicable the traditional joinder of action.

And even if it were possible to envisage the commencement of a multitude of individual fraud actions, it does not seem to us likely to promote the "fair and efficient adjudication of the controversy" to separate the contract action from the intimately related fraud actions.

We have considered the other issues raised by defendants and find them to be without merit. Special Term was justified in finding a sufficient showing of plaintiffs' financial ability to represent the class. And we find here no such uncertainty as to the nature and size of the class as was noted in *Dupack v Nationwide Leisure Corp.* (70 AD2d 568, *supra)* and *Klakis v Nationwide Leisure Corp.* (73 AD2d 521, *supra).*

For the reasons set forth above, the order of the Supreme Court, New York County, (SHAINSWIT, J.), entered June 12, 1979, granting plaintiffs' motion to renew, and upon renewal, granting the motion for class action certification, should be affirmed, with costs.

MURPHY, P. J. (dissenting). Defendants sponsored a tour at their resort, La Caravelle, in Guadaloupe during the period July 24 through July 31, 1977. The plaintiffs, members of that tour, served a complaint containing causes of action for (1) conspiracy to defraud, (2) breach of contract, and (3) fraud.

They alleged, *inter alia,* that prior to their departure Guadaloupe had been experiencing a drought. However, the defendants never informed them of this fact. Plaintiffs further assert that the disruptions caused by this drought included but were not limited to (1) sporadic electric service, (2) no air conditioning, (3) intermittent use of water facilities, and (4) nonoperative toilets. They now seek to have this proceeding certified as a class action under CPLR article 9.

The first question is whether the plaintiffs may properly assert claims in a class action based upon fraud and misrepresentation. CPLR 901 (subd a) provides the following prerequisites to a class action:

"a. One or more members of a class may sue or be sued as representative parties on behalf of all if:

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interests of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

For purposes of discussion, it will be assumed that paragraph 1 is satisfied. With regard to paragraph 2, it will be assumed that there are some questions of law or fact common to the class that the plaintiffs seek to represent on the causes founded upon fraud and misrepresentation. However, the critical element of reliance in both of these causes of action is highly subjective. This element will vary from one individual on the tour to another. *(Brenner v Title Guar. & Trust Co.,* 276 NY 230; *Ballen v Storch Int. Asti Tours,* 46 AD2d 643.) In the words of the statute, the element of reliance affects "only individual members" of the class. (CPLR 901, subd a, par 2.)

In this background, the more critical subissue presented in reference to paragraph 2 is whether the questions of law or fact common to the class "predominate" over the single question of reliance that varies from individual to individual. This subissue of "predominance" must be decided in qualitative rather than quantitative terms. Therefore, even though there

may be many questions of law or fact common to the class, the overriding fact remains that a trier of fact must consider the element of reliance upon a case-by-case basis *(Brenner v Title Guar. & Trust Co., supra; Ballen v Storch Int. Asti Tours, supra).* In this perspective, the plaintiffs failed to show that the common questions in this proceeding "predominate" so as to satisfy the prerequisite embodied in paragraph 2. As will be discussed below, the plaintiffs also failed to meet the requirements set forth in paragraphs 3, 4 and 5.

With regard to CPLR 901 (subd a, par 3), any claims by the plaintiffs founded upon fraud and misrepresentation are not "typical" of claims that might be made by other members of the tour. In each instance, a trier of fact must examine the particular facts upon which an individual relied.

With reference to paragraph 4, the plaintiffs cannot fairly and adequately protect the interests of the class with respect to claims based upon fraud and misrepresentation. The plaintiffs do not know, and thus, could not prove the facts that led to each instance of reliance.

Paragraph 5 is not satisfied because a class action on the causes under discussion will not be superior to other available methods for the fair and efficient adjudication of those causes. A class action on these causes is impractical since the trier of fact must necessarily address itself to the merits of each claim. To avoid unnecessary confusion, separate actions and separate trials should be had on claims of this nature.

The plaintiffs, upon the particular facts in this proceeding, have not demonstrated that they have met the prerequisites for maintaining a class action bottomed on fraud and misrepresentation. Under the circumstances herein, the first and third causes of action, predicated upon fraudulent representation and false advertising, will not support a class action.

The second question is whether plaintiffs have met the prerequisites of CPLR 901 so as to permit them to proceed on behalf of a class for breach of contract. This record raises as many questions as it answers. First, there is a discrepancy as to the size of the class. The complaint states that there are no fewer than 250 persons while plaintiffs' brief alleges that there are no fewer than 193 persons. Second, it is not clear from the record how many persons actually stayed in La Caravelle and how many stayed in other resorts on Guadaloupe. Third, there is no indication as to how many persons were New York State residents and how many were nonresi-

dents. Fourth, there is no mention of whether any other person on the subject tour has filed a claim against the defendants. Fifth, the plaintiffs have not shown in sufficient detail that they have the financial resources to prosecute this action on behalf of a class.

Because of these deficiencies in the record, it cannot be intelligently determined whether plaintiffs have met the prerequisites of CPLR 901. Consequently, their motion must be denied with leave to renew on the second cause upon a proper showing that this proceeding satisfies the prerequisites for a class action *(Gottlieb v March Shipping Passenger Servs.,* 67 AD2d 879).

In reply to the majority opinion, the following observations must be made. First, the Committee to Advise and Consult never stated that, under CPLR article 9, causes of action based upon fraud and misrepresentation would become proper subjects of a class action (Eighteenth Ann Report of NY Judicial Conference, 1973, PA35 *et seq.)* Second, the majority makes no attempt to explain how such causes of action fit within CPLR 901 (subd a, pars 3, 4). Third, in his 1978 Practice Commentary, Dean McLaughlin (McKinney's Cons Laws of NY, Book 7B, CPLR C901:6, p 25, 1979-1980 Pocket Part) also states: "In the three years that the new class action statute has been in effect it has become clear that the New York courts have not embraced the class action with the same warmth it has received in the federal courts. Thus, where fraud is involved the state courts seem predisposed to find that questions of reliance and damage (which, of course, will differ with each member of the class) predominate over the common question whether a fraudulent misrepresentation occurred. Accordingly, a class action is inappropriate. See, e.g., Strauss v. Long Island Sports, Inc., 1978, 60 A.D.2d 501, 401 N.Y.S.2d 233."

Accordingly, the order of the Supreme Court, New York County (SHAINSWIT, J.), entered June 12, 1979, granting plaintiffs' motion to renew, and upon renewal, granting their motion for class action certification, should be reversed, on the law, and the motion should be denied with leave to renew on the second cause upon a proper showing.

KUPFERMAN and LYNCH, JJ., concur with SANDLER, J.; MURPHY, P. J., and LUPIANO, J., dissent in an opinion by MURPHY, P. J.

Order, Supreme Court, New York County, entered on June 12, 1979, affirmed. Respondents shall recover of appellants $50 costs and disbursements of this appeal.