OPINION OF THE COURT
Harold Tompkins, J.
An issue yet to be resolved in New York is presented in this motion for class action certification, namely, whether a State court should entertain a class action where members of the proposed class are nonresidents of the forum State.
Plaintiff moves for an order pursuant to CPLR 902 certifying this action as a class action on behalf of all holders of common stock of the defendant APL Corporation at the close of business on September 21, 1981. Certification is granted.
*49 FACTS
This action involves the alleged breach of an agreement to merge two publicly held corporations, APL Corporation (hereinafter APL) and NVF Corporation (hereinafter NVF). Both corporations’ stock is traded on the New York Stock Exchange. Plaintiff alleges that the corporate defendants’ agreement to merge was conditioned upon there being no material adverse change in the financial condition of APL and that the conditional nature of the merger agreement was not disclosed to the public. Plaintiff further alleges that at the time defendants issued various announcements about the merger to the public they in fact knew that there had indeed been a material adverse change in the business or financial condition of APL and thus that NVF was not required to proceed with the merger proposal. It is alleged that the inaccurate announcements as to the unconditional nature of the merger proposal artificially inflated the market price of APL common stock thus influencing the investment decisions of the proposed class members.
On January 23, 1981 it was announced that APL’s financial condition was deteriorating, requiring closing of its retail packaging operations. On May 13, 1981 it was reported that APL sustained a $7 million loss for the quarter ended March 31, 1981.
Plaintiff contends that the defendants, aware of the condition of APL, nevertheless did not disclose the conditional nature of the proposed merger until September 21, 1981 when NVF and APL publicly announced the cancellation of the merger agreement. Also announced at that time was a loan of $5 million by NVF to APL convertible into APL common stock at $9.75 a share with interest at the prime rate which, if fully converted, would result in NVF owning over 50% of APL’s outstanding common stock. That same day APL recorded the largest New York Stock Exchange percentage decline for the day.
Plaintiff’s complaint states three causes of action, the first for misrepresentation and fraud; the second for estoppel, and the third cause of action alleges a breach of *50 contract. Plaintiff alleges in her third cause of action to be a third-party beneficiary of the contract between APL and NVF.
The third cause of action was the subject of a motion to dismiss which was denied June 7, 1982. The court, in denying the motion, stated that at that time it could not be said that the alleged agreement to merge was only an “agreement to agree” as the defendants contended.
For class action certification to be granted, the five requirements set forth in CPLR 901 must be present. CPLR 901 requires that the class be so numerous that joinder is impracticable, that questions of law and fact common to the class predominate over any question affecting only individual members, that plaintiff’s claims are typical of the claims of the class, that plaintiff will fairly and adequately protect the interests of the class, and a class action must be superior to other available methods for a fair and efficient adjudication of the controversy.
When the CPLR 901 criteria have been met the court is then guided by the factors set forth in CPLR 902 before granting certification. CPLR 902 (subd 4) requires the court to consider whether it is desirable to concentrate the litigation in this forum. In answering this question in the context of this case the court must consider whether the nonresident members of the proposed class are subject to the jurisdiction of the court. Plaintiff alleges the proposed class of 3,900 shareholders are scattered throughout the United States and defendants have argued that these nonresidents will not be bound by the judgment in this action thus mandating a finding of undesirability of a class action. This jurisdictional question will be discussed prior to a consideration of the CPLR 901 criteria.
JURISDICTION
In Hansberry v Lee (311 US 32) the court recognized that in a “class” or “representative” suit in personam jurisdiction was not required to bind nonparties. The court stated that where the representative will fairly represent the class and where there is a commonality of interest the action may proceed and nonresidents will be bound notwithstanding lack of in personam jurisdiction (supra, pp 41-42).
*51 Recently the Supreme Court reversed its grant of certiorari in the case of Miner v Gillette Co. (87 111 2d 7, cert dsmd 459 US_). There the Illinois Supreme Court certified a nationwide class and recognized the class action as an exception to the general rule that in personam jurisdiction is required for there to be a binding judgment upon nonresidents. Thus if was not necessary for there to be minimum contacts between the nonresidents and the forum State for the nonresidents to be bound by the judgment. The court stated that this exception was justified by reason of the nature of the class action whose “very purpose is to allow a representative party to pursue the claims of a large number of persons with like claims * * * The basic premise of the class action procedure is the fairness of having a proper representative act on behalf of the absent parties” (supra, p 14). Adequacy of representation and proper notice to the class were found to be the essential components of a class action involving nonresidents to insure its constitutionality. Thus procedural due process was the necessary prerequisite, not in personam jurisdiction.
In Shutts v Phillips Petroleum Co. (222 Kan 527) the court held that minimum contacts with the forum State were not necessary to bind nonresidents, drawing a distinction between nonresident plaintiffs involved in class actions and nonresident defendants that must have minimum contacts with the forum under the doctrine enunciated in International Shoe Co. v Washington (326 US 310), Hanson v Denckla (357 US 235), Shaffer v Heitner (433 US 186) and World-Wide Volkswagen Corp. v Woodson (444 US 286). The court stated that “while the essential element necessary to establish jurisdiction over nonresident defendants is some ‘minimum contacts’ between the defendant and the forum state, the element necessary to the exercise of jurisdiction over nonresident plaintiff class members is procedural due process” (Shutts v Phillips Petroleum Co., supra, pp 542-543).
New Jersey and Pennsylvania have reached the opposite conclusion. In Feldman v Bates Mfg. Co. (143 NJ Super 84) the court held that a State court does not have jurisdiction over and therefore cannot bind to a judgment an individual with whom the State has no contacts, ties or relations. In *52 Klemow v Time, Inc. (466 Pa 189, cert den 429 US 828), the court stated that the class could consist only of Pennsylvania residents and those who submit themselves to the jurisdiction of the court finding that State court jurisdiction was territorially limited.
The resolution of this issue will have a major impact on the very existence of class actions since Federal court diversity jurisdiction over small claim plaintiff class actions pursuing State law claims (i.e., most consumers’ class actions) has been eliminated (Snyder v Harris, 394 US 332 [class members cannot aggregate claims to satisfy amount in controversy]; Zahn v International Paper Co., 414 US 291 [that the claim of one member exceeds $10,000 is not sufficient]).
Therefore, the continued existence of the class action device will depend in a large part on how State courts react to them. Thus, it is not surprising that since Snyder v Harris (supra) there has been widespread modernization of State class action statutes. (Note, Multistate Plaintiff Class Actions: Jurisdiction and Certification, 92 Harv L Rev 718.)
New York’s CPLR article 9 was enacted in 1975 (L 1975, ch 207) with the explicit purpose of liberalizing the use of the class action device in New York. However, since its enactment courts have continued to interpret the class action statute narrowly. (See, generally, Dickerson, Class Actions under Article 9 of the CPLR, NYLJ, March 18, 1983, p 1, col 2.)
An obstacle to the liberal use of the class action device in New York is the unresolved question of jurisdiction over nonresident class members. The Appellate Division, First Department, has recognized the problem in five cases but has never dealt squarely with the issue.[1] The Court of *53 Appeals is rarely faced with this issue since the denial of certification has been considered a nonfinal order (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.04).
In Gottlieb v March Shipping Passenger Servs. (67 AD2d 879) the court denied certification absent some evidence as to how many of the proposed class were residents of New York and referred to the “unsettled problem” of jurisdiction over nonresidents. (Supra, p 880.) In Simon v Cunard Line (75 AD2d 283) the court noted that State court jurisdiction over nonresident class members was dependent on their minimum contacts with New York (supra, p 290). Although not finally deciding the issue the court held that the class could not be certified until there had been an inquiry as to whether nonresidents of the State were within the class.
Thus, the viability of the nationwide class action in New York remains in doubt. At the center of the controversy surrounding multistate class actions is the distinction between opt-in method of defining the class and the opt-out method contained in the New York statute.
CPLR 903 provides for an opt-out system whereby those class members who are given notice of the class action and fail to request exclusion from the class within a specified period of time are included in the class. An opt-in procedure has also been utilized in New York cases.[2] There, only those proposed class members who affirmatively act to request inclusion in the class are included. This is frequently coupled with a consent to jurisdiction form to be executed by nonresidents which has the effect of curing any jurisdictional problems regarding nonresidents.
The criticism of the opt-in method has been that it is simply a permissive joinder of class members and is contrary to the entire concept of the class action. (See Note, Multistate Plaintiff Class Actions: Jurisdiction and Certification, 92 Harv L Rev 718.) Furthermore, it is thought to substantially diminish class size. (Dickerson, op. cit., p 3, col 2.)
*54 New York’s opt-out method is more consistent with the policy behind class actions but runs afoul of the territorial concept and the minimum contacts requirement since in personam jurisdiction is not acquired by extending notice of the suit and an opportunity to be excluded. It has been argued that a court without in personam jurisdiction to bind nonresidents would also lack the authority to impose a duty on them to act in order to avoid being included in its judgment. (Multistate Plaintiff Class Actions: Jurisdiction and Certification, 92 Harv L Rev 718, 734.)
Thus, although the opt-in system can counteract the jurisdictional problem it is detrimental to the class action device and the opt-out method, more in keeping with general class action principles, does not solve the jurisdictional problem in multistate class actions. (Platto and Snyder, Nationwide Class Actions in New York State Courts?, NYLJ, April 11, 1983, p 1, col 2.)
Turning now to the question of whether minimum contacts are required as to nonresident class members, in Shaffer v Heitner (433 US 186, 212, supra), the court stated that the minimum contacts test governs all assertions of State court jurisdiction. In order to bind nonresidents, minimum contacts would be required. The extent of contacts necessary to satisfy the minimum contacts test depends on the facts of the particular case. (International Shoe Co. v Washington, 326 US 310, 317, supra.) Thus, in the class action context a court can make a determination on whether a nonresident has minimum contacts with the forum by utilizing a liberal approach taking into consideration the parties, the relief requested and the unavailability of a more suitable forum for adjudication of the controversy. Indeed, a departure from strict jurisdictional analysis was recognized by the Supreme Court in Hansberry u Lee (311 US 32, supra) and Supreme Tribe of Ben-Hur v Cauble (255 US 356). Mechanical application of traditional jurisdictional rules here is precluded (Comment, Consumer Class Actions with a Multistate Class: A Problem of Jurisdiction, 25 Hastings L J 1411, 1445).
In a multistate class action the court should consider that the nonresident is a plaintiff and usually would play a passive role with respect to the occurrence from which the *55 lawsuit arises. Thus, the purposeful action requirement utilized to acquire jurisdiction with respect to defendants[3]" would not be equally applicable to plaintiffs by reason of their frequently passive role in the accrual of a cause of action. Flexibility is therefore necessary in applying traditional principles of jurisdiction to nonresident plaintiffs.
Applying the minimum contacts standard to a class action plaintiff, courts can also look to the defendant’s activities in the forum in deciding whether to exercise jurisdiction over the nonresident plaintiff. Here, defendant APL is a New York corporation with its principal place of business here. The three individual defendants are chairman of the board, president and executive vice-president of APL. Defendant NVF maintains a place of business in this State. Both corporate defendants’ stock is traded on the New York Stock Exchange. Therefore, defendants have a substantial nexus with New York.
Next, a policy analysis should be undertaken to determine whether New York has a sufficient interest in resolving this dispute to justify the expenditure of the judicial resources of its courts. (See Miner v Gillette Co., 87 111 2d 2, 16, supra [Ryan, J., dissenting].) Clearly, the answer is yes. The defendants’ activities in the forum are again relevant since New York as the State where the stock is traded has an interest in seeing that parties aggrieved by activity here have a forum where any wrong can be redressed, particularly where no other more suitable forum exists. There will also unquestionably be a large number of class members who are New York residents or who as institutional investors, have their principal place of business here.[4] New York clearly has an interest in providing its residents and taxpayers with a forum.
*56 In engaging in this policy analysis, principles of forum mon conveniens necessarily come into play. Under the doctrine of forum non conveniens it cannot be said that a more suitable forum exists for the adjudication of this controversy (CPLR 327; Silver v Great Amer. Ins. Co., 29 NY2d 356; Westwood Assoc. v Deluxe Gen., 53 NY2d 618; see, also, Dickerson, Class Actions under Article 9 of the CPLR, NYLJ, March 18, 1983, p 1, col 2).
In the instant case, after a flexible application of the minimum contacts test, the court is satisfied that there are sufficient contacts between the proposed class and New York to enable the court to exercise jurisdiction over the nonresident class members. This having been established, the court must still be mindful of the requirements of procedural due process. In order for the class members to be bound by the judgment in this action the class must be adequately represented (a required finding under CPLR 901, subd a, par 4) and notice to the class member must be adequate so that an opportunity to be heard and to choose not to participate is afforded.
Now turning to the CPLR 901 prerequisites, plaintiff alleges that all five requirements have been met. Defendants only concede that the numerosity requirement of CPLR 901 (subd a, par 1) has been met since there were approximately 3,900 common shareholders of APL on September 21, 1981.
Plaintiff has the burden of proving that each of these prerequisites has been met. (Scott v Prudential Ins. Co. of Amer., 80 AD2d 746.) In this regard, the requirements of CPLR article 9 should be applied liberally, not restrictively. A liberal construction of article 9 is in keeping with the legislative intent as is evidenced by the Governor’s memorandum in support of the enactment. (L 1975, ch 207.) Governor Carey noted: “The present law and its precursors * * * have resulted in needlessly restricting meaningful access to state courts for countless people. Such *57 an anachronism has no place in a legal system which has to cope with contemporary problems” (NY Legis Ann, 1975, p 426).
In Friar v Vanguard Holding Corp. (78 AD2d 83, 91) the court in reviewing CPLR 901, said: “These criteria should be broadly construed not only because of the general command for liberal construction of all CPLR sections (see CPLR 104), but also because it is apparent that the Legislature intended article 9 to be a liberal substitute for the narrow class action legislation which preceded it”.
Moreover, the court need not review the merits of the action in order to find that class action certification is warranted (Simon v Cunard Line, 75 AD2d 283). The court need only look to see whether on the surface it appears the cause of action has merit. (Supra, p 288.)
With these principles in mind an examination of each prerequisite will be undertaken.
COMMON QUESTIONS OF LAW OR FACT
The requirement that common questions of law or fact predominate has presented a major obstacle to class action certification in common-law fraud actions. Prior to enactment of article 9, common-law fraud actions were inappropriate for class action treatment since the individual reliance necessary to the establishment of a fraud claim was thought to involve individual fact finding, thus undercutting the purpose behind class actions. In the common-law fraud action it was thought that each class member would be required to establish reliance thereby resulting in an individual trial for each class member.
Now the issue of class certification for fraud actions, as in any other action, simply turns on compliance with the prerequisites set forth in CPLR 901. (Norwalk v Manufacturers & Traders Trust Co., 80 AD2d 745.)
Here plaintiff claims that the issue of the alleged misrepresentation is common to all class members and that this question clearly predominates over any individual questions. It is plaintiff’s position that there is a finite group of similarly situated shareholders who relied on a misrepresentation by the defendants that was identical as *58 to all the proposed class members. It is further argued that the only fact question is whether defendants advised the public that they had agreed to propose a merger between APL and NVF when in fact they did not intend to effect such a merger.
Plaintiff relies upon King v Club Med (76 AD2d 123) in support of its position that notwithstanding the subjective nature of proof on the reliance element of a fraud action, class action certification is still appropriate here.
In King v Club Med (supra), certification was granted in a common-law fraud action. There the defendant represented in travel brochures that “luxury” accommodations would be furnished when in fact the accommodations were standard. Reliance on this misrepresentation can be inferred from the class members’ decision to opt for the luxury accommodation.
The court stated (p 127) that: “[I]t is not plausible that persons confronted with the very distinct choice in the character of facilities presented in the defendants’ brochures would have opted to spend a July vacation on a tropical island in a ‘luxury’ hotel with air conditioning, private bathroom and electricity, without having relied on those representations.”
Reliance on travel brochures was inferred, and class certification granted in Guadagno v Diamond Tours & Travel (89 Misc 2d 697). However, where “‘individual reliance would not be substantially established by the very nature of the proofs on the issue of liability’ ” reliance is not readily inferred and class action certification is not granted. (Strauss v Long Is. Sports, 60 AD2d 501, 507; Norwalk v Manufacturers & Traders Trust Co., 80 AD2d 745, supra; Cornell Univ. v Dickerson, 100 Misc 2d 198.) Thus, where reliance cannot be presumed courts have not been willing to certify class actions based on fraud claims.
As was said in Norwalk v Manufacturers & Traders Trust Co. (supra, p 746) “Where reliance * * * cannot be readily inferred * * * there is no advantage to be gained from permitting the action to proceed as a class action.”
Here, as in King v Club Med (supra), it is possible to infer reliance on the alleged misrepresentation by the very *59 retention of shares of APL stock by the class members. It can be presumed that the decision to retain APL stock was made in reliance on the agreement to propose a merger with NVF.
Generally it follows that a shareholder who holds stock in a company that is involved in merger negotiations will retain stock in anticipation of any profit that would be realized on the merger. To infer reliance based on this fact does not require a finding that every shareholder held stock in reliance on the agreement to propose a merger. There will certainly be some shareholders that may not have been aware of the agreement and announcements or who are aware of the agreement and with knowledge of the announcements nevertheless held their stock for other reasons. This is not fatal to certification here, however, since the test is whether the common questions predominate and here even with some exceptions on reliance the common core of alleged misrepresentation directed at the public at large and not to individual shareholders predominates.
The statements that form the basis of this litigation were the same as to all class members. The announcement that APL and NVF would propose a merger in 1981 had the same effect on each shareholder: It inflated the value of the APL holdings. Furthermore, the statement that resulted in the sharp decline in APL stock, that the merger would not be proposed because of the condition of APL, had the same effect on all proposed class members of reducing the market value of their APL stock. Moreover, it is not necessary that every issue be common to the class (Gilman v Merrill Lynch, Pierce, Fenner & Smith, 93 Misc 2d 941).
Implicit in the requirement that common questions of fact or law predominate is that there may be remaining individual questions of law or fact.
As Dean McLaughlin points out: “If the question of fraud lies at the heart of the class action and clearly preponderates over the uncommon questions such as reliance and damages, a class action will now lie” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 901:3, p 325; King v Club Med, supra).
*60 Based upon the foregoing, the court finds that CPLR 901 (subd a, par 2) has been satisfied. The statute requires that common question of fact or law predominate. Individual issues may develop as they would in any class action, but given the liberal construction the Legislature intended, the questions common to the APL shareholders clearly predominate over those confined to individual shareholders.
TYPICALITY OF PLAINTIFF’S CLAIMS
CPLR 901 (subd a, par 3) requires that plaintiff’s claims be typical of the proposed class. Defendants contend this prerequisite has not been met on a number of grounds, inter alia, that plaintiff as a “holder” of stock would not possess a cause of action under rule 10(b)(5) of the Securities & Exchange Commission, which is restricted to those who purchased or sold in reliance, that the various class members may have relied on different representations made concerning the proposed merger, and finally that claims of the various class members may be governed by the laws of different States.
The typicality requirement is satisfied when “plaintiff’s claim derives from the same practice or course of conduct that gave rise to the remaining claims of other class members and is based upon the same legal theory”. (Friar v Vanguard Holding Corp., supra, p 99.)
Here it is clear that plaintiff’s claims are typical. Claims of the entire class will center on the alleged misrepresentations concerning the proposed merger. Plaintiff’s causes of action in misrepresentation, estoppel and breach of contract will be shared by the other class members.
Accordingly, the typicality requirement has been met by plaintiff.
ADEQUACY OF REPRESENTATION
CPLR 901 (subd a, par 4) requires that plaintiff be in a position to adequately protect the interests of the members of the class in this litigation.
Defendants argue that “adequacy” has not been established since there has been no showing that plaintiff is *61 financially willing and able to shoulder the costs of this litigation and that in any event defendants are entitled to discovery as to ability to finance the litigation prior to certification. Defendants claim that the atypical nature of plaintiff’s claims, on the reliance and choice of law questions, militates against a finding of adequacy.
In determining whether the adequacy requirement has been met, two components must be considered: competence of counsel and the financial resources of the class representative (Gilman v Merrill Lynch, Pierce, Fenner & Smith, supra).
The court is satisfied that plaintiff’s counsel, Wolf Popper Ross Wolf & Jones, with its extensive experience in these matters will competently represent plaintiff and the class in this litigation.
The second component, that of the financial ability of plaintiff to prosecute the lawsuit, has also been demonstrated here since, plaintiff’s counsel has represented that it would advance the funds necessary to maintain the action. The question of plaintiff’s financial ability is therefore irrelevant. (Kamens v Horizon Corp., 81 FRD 444.)
Defendants assert that they are nevertheless entitled to precertification discovery of plaintiff’s financial resources and arrangements with counsel. However, it has been held that where counsel has agreed to advance the funding for the litigation and absent a showing that these funds will not be advanced, there is no valid basis for questioning plaintiff about financial resources (Kamens v Horizon Corp., supra; Stern v Carter, 97 Misc 2d 775, mod 82 AD2d 321).
Accordingly, the court finds that the CPLR 901 (subd a, par 4) adequacy prerequisite has been satisfied.
SUPERIORITY OF CLASS ACTION
CPLR 901 (subd a, par 5) requires the court to find that the class action is superior to other available methods for a fair and efficient adjudication of the controversy.
In arguing that the class action is not superior, defendants contend that the reliance element necessary to the establishment of plaintiff’s claims of fraud, estoppel and *62 breach of contract will result in individual fact finding and thus 3,900 trials, thus resulting in a failure to satisfy the superiority requirement.
A determination of the issue of superiority necessarily requires a comparison between the class action and other available methods for the adjudication of the controversy. Perhaps the most significant consideration which favors class actions is the impracticability of an individual suing for the alleged wrong when individual damages are relatively small. Where as here individual damages may not warrant commencement of a lawsuit, the only available method for redress of the alleged wrong would be the class action.
Furthermore, if class action certification is not granted, and joinder has been demonstrated to be impractical, the result could be individual lawsuits around the country with possibly conflicting results.
The class.action is the superior method available for the fair and efficient adjudication of this controversy.
CPLR 902
After review of the discretionary criteria listed in CPLR 902 the court finds that this action is appropriate for class action certification. In making this determination the court is aware of the ability of the trial court to decertify a class if it later appears after discovery that certification was not appropriate, or divide it into subclasses if appropriate (CPLR 906).
Accordingly, certification is granted. The class shall consist of all shareholders of record except defendants on September 20, 1981. Settle order providing for an opt-out method of notice. (CPLR 903.) Plaintiff shall bear the cost of notice (CPLR 904). The notice shall be by first class mail and shall advise each member that (a) the court will exclude him or her from the class if so requested within 30 days of service of the notice; (b) the judgment whether favorable or not will include all members who do not request exclusion; and (c) the court has made no determination on the merits of this action. Defendants shall fur *63 nish plaintiff with a list of the shareholders of record on the date in question within 30 days of entry of order.

. Gottlieb v March Shipping Passengers Servs., 67 AD2d 879; Tamer v Turbodyne Corp., 68 AD2d 614; Simon v Cunard Line, 75 AD2d 283; Bloom v Cunard Line, 76 AD2d 237; Reis v Club Med, 81 AD2d 793, app dsmd 54 NY2d 753. However, the court recently affirmed the certification of a nationwide class in Geelan v Pan Amer. World Airways, NYLJ, July 30, 1980, p 7, col 5, affd 83 AD2d 538.

. Reis v Club Med, 81 AD2d 793; Geelan v Pan Amer. World Airways, 83 AD2d 538, app dsmd 54 NY2d 1025.

. Note, Multistate Plaintiff Class Actions: Jurisdiction and Certification, 92 Harv L Rev 718, 732, citing, e.g., Hanson v Denckla, 357 US 235, 253.

. It is clear that among the 3,900 shareholders of record there will be many nonresidents of New York as well as many New York residents and perhaps some New York based institutional investors. Accordingly, the court chooses not to deny this application pending discovery as to the make-up of the class in terms of the number of New York residents. (Reis v Club Med, 81 AD2d 793; Simon v Cunard Line, 75 AD2d 283.) The parties have alleged a class scattered throughout the country and given the court’s power under CPLR 906 to decertify the class if it later appears inappropriate, *56 certification of the class, after resolution of the jurisdictional issue, is appropriate notwithstanding an exact breakdown of the make-up of the class in light of the finding concerning the court’s jurisdiction over this suit.