Beatrice Katz, Respondent, v NVF Company et al., Appellants.

First Department, March 22, 1984

APPEARANCES OF COUNSEL

*Marian R. Probst* of counsel (*Ellen P. Chapnick* with her on the brief; *Wolf Popper Ross Wolf & Jones,* attorneys), for respondent.

*Kathleen M. Comfrey* of counsel (*Robert F. Dobbin* and *Margery S. Bronster* with her on the brief; *Shearman & Sterling,* attorneys), for NVF Company, appellant.

*David L. Foster* and *A. William Urquhart* of counsel (*Willkie Farr & Gallagher,* attorneys), for APL Corporation and others, appellants.

OPINION OF THE COURT

Kassal, J.

Plaintiff, owner of 500 shares of common stock of APL Corp. (APL), sought to represent the 3,900 stockholders on claims of fraud, estoppel and breach of contract for losses

alleged to have resulted from false and misleading statements concerning a proposed merger between APL and NVF Company (NVF). The motion sought class action certification for the APL shareholders of record on September 21, 1981, when it was announced that the merger would not be consummated.

Both APL and NVF are traded publicly on the New York Stock Exchange. APL is a New York corporation, with its principal place of business in this State. On December 5, 1980, the three individual defendants, officers and directors of APL, agreed to sell their 17.7% APL stock interest to NVF for $8.75 per share, which resulted in NVF's interest in APL being increased to 42%. The press release announced that negotiations dealing with the proposed merger of APL into NVF, previously announced in January, 1980, had been terminated but that, in connection with the stock purchase from the individual defendants, "NVF has also agreed to propose a combination with APL during 1981 which would result in APL shareholders receiving a consideration having a value of not less than $9.75 per share * * * subject to customary agreements and all necessary approvals." The stock purchase agreements provided that by December 31, 1981, NVF would submit a merger proposal to be incorporated into an agreement, conditioned upon "a representation that there shall have been no material adverse change, from June 30, 1980, as to the business or financial condition" of APL.

The record reflects that, over the period, there were material, adverse changes in APL's business, including a $6,390,000 loss for the 6-month period ending December 31, 1980, $6,500,000 loss in the first quarter of 1981 (as a result of the closing of a retail packaging plant) and an operating loss of $7,000,000 for the 9-month period ending March 31, 1981. On September 14, 1981, APL reported a net loss of $6,347,000 for the year ending June 30, 1981, in contrast with net earnings of $2,105,000 for the prior fiscal year. On September 21, 1981, NVF and APL publicly announced the cancellation of any proposed merger, the joint press release stating that "because of a material adverse change in APL's business and financial condition from June 30, 1980, NVF had been contractually relieved

of its obligation to make the merger proposal." The corporations also announced that NVF had made a 2-year $5,000,000 subordinated loan to APL, convertible into APL common stock at $9.75 per share.

According to plaintiff, the public had not been apprised that the merger was conditioned on the unchanged business and financial status of APL and further, defendants knew when the merger was publicly announced that there had been a material, adverse change in APL's business which would relieve NVF from proceeding with the merger proposal. When the cancellation of the merger was announced, APL reported a substantial decline in price, closing at 4⅛. As a result, plaintiff and members of the proposed class claim damages in excess of $15,000,000. In opposition, defendants assert that the conditional nature of the merger had been disclosed both in press releases and in SEC filings and that *Value Line* had reported the tentative nature of the merger proposal, opining that APL was a high-risk, speculative stock. In fact, in its May 8, 1981 issue, *Value Line* reported that the merger discussions had been "an on-again, off-again engagement for more than a year" and in its August 7, 1981 issue, advised that "[m]erger rumors appear to have subsided."

We find the present record palpably insufficient to demonstrate that the case is presently appropriate for class action treatment. No affidavit of the plaintiff was offered, reliance being placed exclusively upon the affidavits of counsel, who clearly lack requisite personal knowledge of the facts. Nor does the record disclose when plaintiff purchased her stock. Although defendants are in possession of the stock transfer records and could have disclosed when plaintiff became a stockholder of record, it was incumbent upon the plaintiff to define the class she seeks to represent, the basis for reliance and her representative capacity.

The class, as certified by Special Term (119 Misc 2d 48), was too broad and encompassed a variety of subclasses. The effect of the merger proposal on the market price, if any, and the various considerations which may have motivated the general public to purchase and thereafter retain stock may depend upon a host of individual factors unrelated to the proposed merger. Thus, those who purchased at

a later date, after the proposed merger had been announced, as well as those who had sold before announcement of the cancellation of the merger might be in a significantly different position in terms of class representation, than shareholders who purchased or retained their stock in reliance upon an announced merger (cf. *Tanzer v Turbodyne Corp.,* 68 AD2d 614).

The thrust of the action sounds in fraud and misrepresentation. Accordingly, plaintiff must establish that those in the class she seeks to represent had both knowledge of and acted in reliance upon the claimed misrepresentation. In our view, the individual issues respecting knowledge and reliance militate against class action treatment at this juncture. (See *Simon v Cunard Line,* 75 AD2d 283; *Strauss v Long Is. Sports,* 60 AD2d 501; *Ross v Amrep Corp.,* 57 AD2d 99, app dsmd 42 NY2d 856.) Contrary to the finding of Special Term, this is not a case where one may clearly infer that a stockholder retained his shares in reliance upon the agreement with respect to the proposed merger. (*King v Club Med,* 76 AD2d 123, involving a claim of identical misrepresentations made in defendants' travel brochures as to the facilities offered to members of the tour, poses a different factual situation than here, where a variety of factors may induce one to purchase and retain stock in a public corporation.)

On this record, no attempt has been made to ascertain how many persons comprise the class. Plaintiff improperly assumes that all of those who held their stock until the merger talks were discontinued did so solely in reliance upon the contemplated merger. This conclusory assertion, however, is insufficient to demonstrate that common questions of law or fact predominate and that the claims of the representative party are typical of those of the class (CPLR 901, subd a, pars 2, 3). Nor does it appear whether plaintiff acted in reliance upon the proposed merger since the record does not disclose when she became a stockholder. In the absence of a sufficient evidentiary basis, Special Term erred in certifying the class solely upon the pleadings and the affidavits of counsel, containing general, conclusory allegations (see *Chimenti v American Express Co.,* 97 AD2d 351, 352; *Dupack v Nationwide Leisure Corp.,* 70 AD2d 568, 569). But, even were we to assume that plaintiff

purchased and retained her stock in reliance upon the announced merger proposal, it was necessary for plaintiff to show that there were others similarly situated who also acted on such reliance (see *Gottlieb v March Shipping Passenger Servs.*, 67 AD2d 879).

In view of the insufficiency of the record to determine with some precision the nature and size of the class and the claimed basis for reliance, class action consideration is premature. The parties should conduct relevant discovery as to the nature and size of the class (see *Bloom v Cunard Line,* 76 AD2d 237; *Simon v Cunard Line, supra; Reiken v Nationwide Leisure Corp.,* 75 AD2d 551; *Klakis v Nationwide Leisure Corp.,* 73 AD2d 521; *Dupack v Nationwide Leisure Corp., supra*). On this record, without such discovery, we are invited to speculate whether plaintiff purchased and retained her stock in reliance upon the proposed merger and, equally critical, whether she adequately represents others similarly situated. A further development of the facts is necessary to determine whether each of the prerequisites contained in CPLR 901 have been met: (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class which predominate over questions affecting only individual members; (3) the claims of the representative party are typical of those of the class; (4) the representative party will fairly and adequately protect the interests of the class; (5) the class action is superior to other available methods for the fair and efficient adjudication of the controversy. The record at this point is a blunderbuss approach, supported by vague and unsubstantiated claims.

In view of our disposition, at this juncture, we need not resolve the constitutional issue as to whether jurisdiction may be asserted over nonresident members of the class. We have commented with respect to the "perplexing and unsettled problem as to the extent to which the judgment of a New York State court in a * * * class action * * * would bind nonresident * * * members of the class." (*Gottlieb v March Shipping Passenger Servs.*, 67 AD2d, at p 880; see, also, *Tanzer v Turbodyne Corp., supra; Simon v Cunard Line, supra; Bloom v Cunard Line, supra.*) The exercise of jurisdiction under due process standards requires the presence

of certain minimum contacts necessary to bind an individual to any judgment to be entered (*International Shoe Co. v Washington,* 326 US 310; *Shaffer v Heitner,* 433 US 186; *Rush v Savchuk,* 444 US 320; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286). Although our courts have not determined the issue, it appears that New Jersey, applying the minimum contacts test of *International Shoe,* denied class action certification on a finding that "the large majority of the proposed class are nonresidents who would not be affected by the judgment" (*Feldman v Bates Mfg. Co.,* 143 NJ Super 84, 95). Pennsylvania, in *Klemow v Time, Inc.* (466 Pa 189, cert den 429 US 828) limited the class to Pennsylvania residents and to nonresidents who submitted themselves to the jurisdiction of the Commonwealth. On the other hand, there are other jurisdictions that hold to the contrary (see *Shutts v Phillips Petroleum Co.,* 222 Kan 527, cert den 434 US 1068; *Schlosser v Allis-Chalmers Corp.,* 86 Wis 2d 226; *Miner v Gillette Co.,* 87 Ill 2d 7, cert granted 456 US 914, cert dsmd __ US __, 103 S Ct 484).

In concluding that jurisdiction could be asserted over nonresident stockholders of APL, Special Term, relying upon *Miner* and *Shutts* (*supra*), upheld the assertion of jurisdiction over both residents and nonresidents, adopting an opt-out procedure as more appropriate for general class action principles, although recognizing that the procedure may be in conflict with the minimum contacts requirement of *International Shoe* (*supra*). Under the opt-out procedure, the onus is placed upon each member to elect to be excluded from the class. In so directing, Special Term minimized to some degree the concern as to the necessary jurisdictional nexus which had previously been expressed by us in *Gottlieb, Tanzer, Simon* and *Bloom* (*supra*), and held that jurisdiction could be exerted over nonresidents. This was done by applying the minimum contacts standard upon examining the activities of the defendants within this forum and the interest which New York had in the issues in dispute. Such considerations, however, have no real bearing upon the question of whether sufficient contacts exist to assert personal jurisdiction over nonresident members of the class. *Hansberry v Lee* (311 US 32) decided prior

to *International Shoe,* does not support the conclusion that jurisdiction may be properly asserted as against nonresident class members, since there, the issue involved only owners of property situated in Illinois and did not deal with class members who were nonresidents of that State.

Under the circumstances, until the jurisdictional issue has been finally resolved in terms of applicable constitutional principles, perhaps it would be preferable to adhere to the procedure employed in *Geelan v Pan Amer. World Airways* (83 AD2d 538) where Special Term used an opt-in procedure to ensure the necessary personal jurisdiction over nonresident members of the class. We do not express disapproval of the opt-out procedure as to residents of this State, since that procedure is in keeping with the underlying concept of class action litigation. The class action device, which calls for a molding to the factual situation in each case, would be best served by an opt-out procedure for New Yorkers in conjunction with an opt-in system for nonresidents (see *Reis v Club Med,* 81 AD2d 793). The flexibility of such an approach would accommodate the competing considerations posed in most cases pending final resolution of the constitutional issue. At this juncture, the action does not present an adequate record for a final disposition of the issue. Following completion of appropriate discovery, and if then appropriate, upon renewal of the application for class certification, the parties may address the constitutional issue.

Accordingly, the order, Supreme Court, New York County (Harold Tompkins, J.,), entered May 18, 1983, *inter alia,* granting plaintiff's motion to certify this as a class action on behalf of all shareholders of record of APL Corporation at the close of business on September 20, 1981, should be reversed, on the law and the facts, and in the exercise of discretion, with costs and disbursements, to deny plaintiff's motion for class action certification and relief incident thereto, without prejudice to renewal, after discovery, on an appropriate showing of facts sufficient to warrant class action treatment.

MILONAS, J. (concurring). We agree that the order appealed herein should be reversed and plaintiff's motion denied with leave to renew upon a proper showing that

class action certification is warranted. The record in the instant matter is insufficient to demonstrate the nature and size of the class involved, the basis for the reliance by members of that class upon the alleged fraud and misrepresentations and whether the five requirements set forth in CPLR 901 for class action status have been met. Consequently, it was premature for Special Term to render a determination in connection with plaintiff's application (119 Misc 2d 48). Under these circumstances, it is unnecessary for us to consider the issue of the constitutionality of asserting jurisdiction over nonresident members of a class, and we decline to that extent to join in the opinion written by our distinguished colleague. As the Court of Appeals has recently reiterated: "It is hornbook law that a court will not pass upon a constitutional question if the case can be disposed of in any other way" (*People v Felix,* 58 NY2d 156, 161). I perceive no purpose in our speculating as to the manner in which to deal with a problem which may or may not arise at some future point in this litigation.

SILVERMAN and LYNCH, JJ., concur with KASSAL, J.; ROSS, J. P., and MILONAS, J., concur in a separate opinion by MILONAS, J.

Order, Supreme Court, New York County, entered on May 18, 1983, unanimously reversed, on the law and the facts, and in the exercise of discretion, to deny plaintiff's motion for class action certification and relief incident thereto, without prejudice to renewal, after discovery, on an appropriate showing of facts sufficient to warrant class action treatment. Appellants shall recover of respondent $50 costs and disbursements of this appeal.